558 A.2d 1208

FARMERS & MECHANICS NATIONAL BANK

v.

Sally F. WALSER.

No. 104, Sept. Term, 1988.

Court of Appeals of Maryland.

June 16, 1989.

Lawrence E. Finegan (Miles & Stockbridge, on brief), Frederick, for appellant.

Charles A. Castle, Frederick, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

MURPHY, Chief Judge.

Maryland Rule 2–221(a) provides that "[a]n action for interpleader or in the nature of interpleader may be brought against two or more adverse claimants who claim or may claim to be entitled to property." The rule further states that the defendants' claims "need not have a common origin or be identical but may be adverse to and independent of each other ... [and that] [t]he plaintiff may deny liability in whole or in part to any or all of the defendants." In this case, we consider whether Rule 2–221 abrogates the common law rule that a stakeholder cannot maintain an interpleader action when one of the defendant-claimants alleges that the stakeholder has incurred an independent liability to her.

## I.

On March 10, 1981, Billy and Sally Walser, husband and wife, executed an agency agreement with the Farmers and Mechanics National Bank of Frederick, Maryland (the

Bank). Pursuant to this agreement, the Bank established joint agency trust account # 56136500 (# 6500) in the names of Billy and Sally. At that time, the Walsers made an initial deposit of $10,522.34 into the account. The agency agreement provided that the Bank was to hold any principal collected by it "subject to the written instructions of Billy F. Walser and Sally F. Walser, signed by Billy F. Walser and Sally F. Walser." The agreement further provided that "cash may be withdrawn from this Agency Agreement or added to from time to time through the medium of Supplemental Receipts to be attached to the original Agency Agreement.... [and that] [t]his Agreement may be terminated by either party on thirty (30) days written notice."

The transactional history of this account shows that from March 10, 1981 through October 23, 1981, eleven separate deposits were made, totaling $259,419.24. During this period, various withdrawals were made from the account. The proceeds of some of these withdrawals were used to purchase stocks and other securities, which continued to be held in trust under the agency agreement; other withdrawals represented cash distributions to the Walsers. As of May 11, 1983, the Bank's records showed that the assets of the account consisted of a Federal National Mortgage Association note, with a book value of $99,656.25, and cash totaling $122,723.18. On that date Billy Walser directed the Bank to deposit the assets of the account into an individual agency account in his name alone. The Bank complied with Billy's request, although the Walsers had not given the thirty days' termination notice as required by the agency agreement, and despite the fact that Sally Walser had not signed the document authorizing the termination of the agreement and the transfer of the funds. This account was designated # 56072800 (# 2800).

Billy died on November 22, 1985. He was survived by his wife, Sally, and three children by a previous marriage. Sally and Billy's three children qualified and were appointed

as Personal Representatives of his estate.[1]  On December 3, 1985, Sally and Billy's children, acting as Personal Representatives, directed the Bank to deposit the proceeds of account #2800 into an account for the Estate of Billy Walser. The Bank's records indicated that at Billy's death the assets in account #2800 had a cash value of $385,-874.96. In accordance with the Personal Representatives' request, the Bank transferred these assets into the Estate's Account.

On April 16, 1987, counsel for Sally Walser, individually, sent a letter to the Bank regarding the original trust account (#6500) established by her and her husband on March 10, 1981. This letter indicated that Sally had been informed that the funds in this account had been transferred by the Bank into an account for the Estate of Billy F. Walser. The letter advised the Bank that the initial agency agreement required both Sally and Billy to sign all withdrawal authorizations and that Sally had never authorized the transfer of the funds from account #6500. Consequently, Sally demanded that the Bank transfer all funds, including accrued interest, which had been in joint account #6500 into an individual account in her name alone.

The Bank did not comply with Sally's request. Instead, on July 15, 1987, it filed a Complaint for Interpleader in the Circuit Court for Frederick County, naming Sally Walser and the Estate of Billy Walser as defendants. The complaint requested that the court "schedule a hearing and thereafter pass an order dismissing the Plaintiff from any liability thereon other than payment of the disputed funds into the Court or as the Court directs," require the "Defendants to interplead as to the property, designating one of them as Plaintiff and one as Defendant," and order the "Defendants to raise in the context hereof, any future or

---

1. Subsequently, on January 20, 1988, Sally was removed as a Personal Representative of the Estate by order of the Orphan's Court for Frederick County. This removal was based upon the conflict which arose between Sally and the Estate over the funds deposited in the Bank.

other disputes they may have as to any funds, assets or properties held by or invested by the bank on behalf of either of them, or their business interests." Sally initially filed an Answer to the Bank's Complaint on August 21, 1987, in which she admitted that the matter was appropriate for interpleader.

On March 18, 1988, the Bank moved for summary judgment against Sally, contending that there was no genuine dispute as to any material fact and that it was entitled to judgment as a matter of law. On March 31, 1988, before the court had taken any action to interplead the parties, Sally filed an Amended Answer to the Complaint for Interpleader, an Answer to the Bank's motion for summary judgment, and a motion to dismiss the Complaint for Interpleader. In the Amended Answer, she denied that interpleader was the appropriate procedure for settling the matter; she stated that her claim for monies due from the Bank was distinct and separate from any dispute between the Bank and the Estate of Billy Walser. In her motion to dismiss the Complaint for Interpleader, Sally alleged that interpleader was inappropriate because the two named defendants—she and the Estate of Billy Walser—had entirely independent and unrelated claims against the Bank. Sally averred that the Estate claimed funds which were properly in its account at the Bank, while she was making no claim to those funds. Instead, she asserted that her claim against the Bank was for the funds which had been deposited in joint account # 6500, as to which the Bank had negligently, and in violation of the trust agreement, allowed Billy to transfer to his own account without her knowledge or consent.[2]

On May 24, 1988, the court, (Stepler, J.), granted Sally's motion to dismiss. It concluded that *Steffey, Inc. v. Sta-*

---

2. On May 24, 1988, prior to the hearing on the motion to dismiss, Sally filed a separate suit against the Bank in the Circuit Court for Frederick County, alleging breach of contract, negligence, breach of fiduciary duty and conversion with respect to the funds which had been transferred from account # 6500.

*tionery Co.,* 161 Md. 124, 155 A. 306 (1931), required dismissal of the interpleader action. It noted that *Steffey* delineated the essential elements for interpleader as requiring that the same thing, debt or duty be claimed by all defendants, that their adverse titles or claims be dependent or derived from a common source, that plaintiff neither has nor claims any interest in the subject matter, and that he have incurred no independent liability to either claimant, that is that he stand perfectly indifferent between them in the position merely of a stakeholder. 161 Md. at 127–28, 155 A. 306, *citing,* 1 Pomeroy, *Equitable Remedies,* § 43, at 70 (5 Eq. Jur.). The court found that Rule 2–221 governing interpleader actions does not change these requirements. Accordingly, it found that Sally had alleged that the Bank was independently liable to her, and thus the fourth requirement was not satisfied and interpleader, therefore, was not appropriate. The court also denied the Bank's motion for summary judgment against Sally, finding that while her affidavit in opposition was not in the correct form, it, nevertheless, satisfied the essential requirements set forth in the rule. The Bank appealed to the Court of Special Appeals. We granted certiorari prior to decision by the intermediate appellate court to resolve the important issues raised in the case.

## II.

Interpleader originated as a common law remedy which could be invoked by a stakeholder in a detinue action when confronted with conflicting claims to property in its possession. *See* Comment, *Can Statutory Interpleader Be Used as a Remedy by the Tortfeasor in Mass Tort Litigation?,* 90 Dick.L.Rev. 439, 441 (1985); Hazard and Moskovitz, *An Historical and Critical Analysis of Interpleader,* 52 Cal.L. Rev. 706, 706–07 (1964). Modern interpleader, however, is derived from the chancery practices of the eighteenth and nineteenth centuries and not from the early common law action. *Statutory Interpleader, supra,* at 441. Initially, courts allowed flexibility in interpleader practice, but during

the nineteenth century they adopted a more rigid approach, developing four essential prerequisites for an interpleader action. *See generally* Hazard and Moskovitz, *supra,* at 706–49. These requirements had become a permanent part of modern interpleader practice when Professor Pomeroy included them in his treatise, *Equity Jurisprudence.* In his discussion of interpleader, he indicated that this equitable remedy

> "depends upon and requires the existence of the four following elements, which may be regarded as its essential conditions: 1. The same thing, debt, or duty must be claimed by both or all the parties against whom the relief is demanded. 2. All their adverse titles or claims must be dependent, or be derived from the same source. 3. The person asking the relief—the plaintiff—must not have nor claim any interest in the subject-matter. 4. He must have incurred no independent liability to either of the claimants; that is, he must stand perfectly indifferent between them, in the position merely of a stakeholder."
>
> 4 J. Pomeroy, *Equity Jurisprudence* § 1322, at 906 (5th ed. 1941).

The courts came to regard these requirements as the four necessary elements of a "strict bill of interpleader," and the "absence of any one of these requirements defeated the plaintiff's request for the remedy."[3] *Statutory Interpleader, supra,* at 443.

---

3. In some cases, the courts allowed an interpleader action to proceed despite the absence of the third requirement concerning the plaintiff's interest in the subject matter. *See John Hancock Mut. Life Ins. Co. v. Kegan,* 22 F.Supp. 326, 329 (D.Md.1938) (discussing the difference between a strict bill of interpleader and an action in the nature of interpleader). In these cases, commonly known as an "action in the nature of interpleader," the stakeholder generally maintained that it was not obligated in whole or in part to any of the claimants, but if the court found such an obligation to exist then the stakeholder should be permitted to pay the stake into court and have the claimants interplead among themselves as to who had the superior claim. *See* P. Niemeyer and L. Richards, *Maryland Rules Commentary,* 108–09 (1984). In these cases, courts permitted the stakeholder to invoke interpleader despite its interest in the subject matter because there is a

## A.

■ In the present case we are concerned primarily with the fourth of these factors—that which requires that the stakeholder not have incurred an independent liability to either of the claimants. Traditionally, the rationale behind this rule rests on the theory that the stakeholder should stand indifferent towards the claimants. As one commentator explains:

> The rationale for the no-independent-liability rule seems to lie in the notion that the stakeholder should be indifferent or neutral as between the claimants, which supposedly cannot be the case when he might be separately liable to one of them. Under those circumstances, it would be to the stakeholder's advantage to have that particular claimant prevail in the interpleader proceeding. Otherwise he would run the risk of being ordered to turn the stake over to one claimant and then being held liable to a second claimant on independent grounds. Wright, Miller & Kane, *Federal Practice and Procedure*, § 1706, at 518 (1986).

Courts continued to apply the no-independent liability doctrine, as well as the other three requirements described by Pomeroy, until 1936, when Congress enacted the Interpleader Act, codified at 28 U.S.C. § 1335. This statute provides that an action for interpleader may be maintained "although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another." 28 U.S.C. § 1335(b). Thus, the act expressly eliminated the first requirement that the parties claim the same thing, debt or duty and the second requirement that the parties' claims be derived from the same source. In addition, because the statute specifically allowed a stakeholder to bring an action in the nature of interpleader, the statute may be construed as abolishing the third requirement that the stakeholder

special ground for equitable relief based upon the plaintiff's showing of multiple vexation. *Statutory Interpleader, supra,* at 443.

have no interest in the subject matter. *See* 6A Moore's, *Federal Practice* ¶ 22.11, at 22–102–03 (1987). The viability of the classic interpleader requirements was further eroded by the passage of the federal interpleader rule, F.R.Civ.P. 22, which provides that a defendant may not object to the plaintiff's complaint for interpleader on the grounds that "the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that he is not liable in whole or in part to any or all of the claimants."

Following the adoption of § 1335 and Rule 22, federal courts regularly held that these enactments abolished the first three requirements. *See generally* Moore, *supra,* ¶ 22.11, at 22–102–04. As to the no-independent liability requirement, these courts initially continued to adhere to this limitation, although most modified their application of the rule so as to allow the parties first to try the issue of independent liability in the interpleader action. If independent liability was found to exist, the court dismissed the interpleader action; when it found that the stakeholder was not independently liable to a claimant, it allowed the interpleader to proceed. *See, e.g., American–Hawaiian Steamship Co. v. Bowring & Co.,* 150 F.Supp. 449, 454–55 (S.D.N. Y.1957) (finding that upon an allegation of independent liability, the court should hear evidence on this issue and if it is found to exist the case should be dismissed, but if the allegation proves false, the interpleader should proceed); *First State Bank v. Citizens State Bank,* 10 F.R.D. 424, 425 (D.Neb.1950) (finding that the mere allegation of independent liability does not automatically defeat an interpleader action; court should hear evidence on the issue and then determine if independent liability exists, which would warrant dismissal of the action).

This approach in the federal courts to the fourth requirement was short-lived, however; the modern trend has been to reject the no-independent liability requirement and permit an interpleader action to proceed. *See, e.g., Libby, McNeill,*

*and Libby v. City Nat. Bank,* 592 F.2d 504 (9th Cir.1978); *Dakota Livestock Co. v. Keim,* 552 F.2d 1302 (8th Cir.1977); *Hebel v. Ebersole,* 543 F.2d 14 (7th Cir.1976); *Provident Mutual Life Insurance Co. of Phila. v. Ehrlich,* 374 F.Supp. 1134 (E.D.Pa.1973), *aff'd in part, rev'd in part (other grounds),* 508 F.2d 129 (3rd Cir.1975); *Stuyvesant Insurance Co. v. Dean Construction Co.,* 254 F.Supp. 102 (S.D.N.Y.1966), *aff'd* 382 F.2d 991 (2d Cir.1967); *Olivier v. Humble Oil & Refining Company,* 225 F.Supp. 536 (E.D. La.1963); *Builders and Developers Corp. v. Manassas Iron & Steel Co.,* 208 F.Supp. 485 (D.Md.1962); *Girard Trust Co. v. Vance,* 5 F.R.D. 109 (E.D.Pa.1946). The majority of these courts have cited the flexibility of modern procedure, in contrast to the rigidness and formality of nineteenth century practice, as the basis for rejecting the no-independent liability doctrine. As the court explained in *Builders and Developers Corp. v. Manassas Iron & Steel Co.,*

> The rationale behind the requirement was that, prior to the promulgation of the present liberal rules governing civil procedure in the Federal courts, had a plaintiff with an independent liability to a defendant been allowed to maintain interpleader against such a defendant there was no opportunity for the defendant to recover an affirmative judgment against the plaintiff. Such a defendant's rights were limited to the fund, and therefore valuable extra claims against the plaintiff might well be lost. Today, however, all controversies regarding the fund and *other claims* of the parties may be decided in an action in the nature of a bill of interpleader with the salutary result of marshalling. 208 F.Supp. at 490 (emphasis in original).

The court continued by noting that " '[c]ontemporary procedure, with its flexible provisions for wide joinder of parties and claims, for separate trial of separate issues where necessary, and for shaping the judgment to the necessities of the case is well adapted to disposing of interpleader cases where independent liability is asserted, and there is no

reason today, under either the statute or the rule, ... for continuing to impose a restriction which has no claim to validity save that it is old.' " 208 F.Supp. at 490, *quoting,* 2 Barron & Holtzoff, *Federal Practice and Procedure* § 551, p. 234. *See also Olivier, supra,* 225 F.Supp. at 539 (citing the flexibility of contemporary procedure as the basis for allowing an independent liability claim in an interpleader action). The court concluded that "the requirement that plaintiff have no independent liability to a defendant-claimant has been done away with," and thus the court rejected "any direct holdings to the contrary, which do not consider expressly the inter-relation of the interpleader statute with the present liberal Federal Rules of Civil Procedure, and particularly the provisions with respect to counterclaims." 208 F.Supp. at 491.

In accordance with this view, some courts have cited F.R.Civ.P. 13, which provides for compulsory and permissive counterclaims and which is applicable in interpleader actions, as the specific basis for allowing an interpleader action to proceed, despite an allegation of independent liability. *See, e.g., Libby, supra,* 592 F.2d at 507 (noting that the modern trend in independent liability cases is to allow an interpleader action to continue because Rule 13 providing for compulsory and permissive counterclaims is applicable to interpleader suits); *Dakota, supra,* 552 F.2d at 1307 (noting that "[u]nder the Federal Rules of Civil Procedure, the rights of the claimant having an independent claim against the stakeholder can be protected adequately within the framework of the interpleader action, particularly since ... Rule 13 which provides for compulsory and permissive counterclaims is applicable to interpleader suits"). Other federal courts have construed Rule 22's provision that interpleader is not to be denied because "the plaintiff avers that he is not liable in whole or in part to any or all of the claimants" to mean that an interpleader action cannot be dismissed merely because a claimant contends that the stakeholder is independently liable to the defendant. *See,*

*e.g., Olivier, supra,* 225 F.Supp. at 539; *Girard, supra,* 5 F.R.D. at 113.

State courts, in jurisdictions which have enacted interpleader rules similar to the Federal Rules of Civil Procedure, have also found that the no-independent liability requirement has been abolished by modern interpleader practice. *See, e.g., Alabama Farm Bureau Mut. Cas. v. Smith,* 406 So.2d 913, 915 (Ala.Civ.App.1981), *cert. denied sub nom.* 406 So.2d 916 (Ala.1981) (court allowed suit for interpleader to proceed although defendant had alleged that the stakeholder was independently liable to him by virtue of the stakeholder's negligence in failing to name him as the insured on a homeowner's policy); *Dick v. First National Bank of Birmingham,* 334 So.2d 922, 926 (Ala.Civ.App. 1976) (holding that the four classic requirements for interpleader were abolished by modern interpleader practice); *First Nat. Bank of Vicksburg v. Middleton,* 480 So.2d 1153, 1156–57 (Miss.1985) (citing federal cases interpreting the federal rule as persuasive authority, the court held that its interpleader rule, which was comparable to the federal rule, had eliminated the four classic requirements for an interpleader action); *Jersey Ins. Co. of New York v. Altieri,* 5 N.J.Super. 577, 68 A.2d 852, 854 (1949) (finding that the state's modernized interpleader practice permitted an interpleader suit to proceed despite a defendant's allegations that the stakeholder was independently liable).

In *Dick, supra,* the court held, on facts markedly similar to those now before us, that a bank could maintain an interpleader action despite a claim of independent liability against the stakeholder. Citing the federal courts' decisions on the issue, the Alabama court in *Dick* found that the four historical conditions for sustaining interpleader had been removed by the state's modern interpleader rule, which was modeled after the federal rule. 334 So.2d at 926. The court explained the rationale behind its holding as follows:

> The avowed purpose of interpleader has always been to avoid multiple and vexatious litigation, with possible dou-

ble liability.... With the demise of common law procedure which imposed restrictions upon joinder of parties and actions and the trial of separate issues, the historical reasons for restrictive use of interpleader are largely removed. Considering the liberality of the new rules of civil procedure, it appears counter productive to their purpose to deny interpleader when there is a fund to which there are or may be adverse claimants, so long as the court has jurisdiction of the parties. The argument of Dick that interpleader was improperly granted because of an independent liability to her by the Bank arising from contract or tort is not acceptable. Claim of independent liability will not prevent the protection of the stakeholder against the title claims of the adverse claimants.... That is the primary purpose of interpleader—to prevent multiple suits and possible double recovery of one liability. 334 So.2d at 926-27.

Thus, the Alabama court concluded that independent liability is no longer a bar to an interpleader action under the modern rules of civil procedure.

### B.

Maryland, like the majority of jurisdictions, originally adopted the four classic requirements as the governing law in interpleader actions. In *Steffey, supra,* decided in 1931, we cited the four prerequisites set forth in Pomeroy's treatise, including the no-independent liability requirement, as the essential elements for maintaining an interpleader action in this State. 161 Md. at 127–28, 155 A. 306, *citing,* 1 Pomeroy, *Equitable Remedies* § 43 (5 Eq. Jur., p. 70). Based on these requirements, we there held that a stakeholder could not maintain an action for interpleader when one of the claimants alleged that the stakeholder was independently liable to him. 161 Md. at 131, 155 A. 306.

In 1961, this Court adopted Rules BU70 and BU71, governing interpleader actions. These rules established a procedure for interpleader which was closely analogous to the federal practice, drawing upon both the federal rule's lan-

guage and the case law which arose from it. In particular, Rule BU70(a) incorporates verbatim the language of the federal rule by providing that a defendant may not object to an interpleader action on the ground "that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical, but are adverse to and independent of one another, or that the plaintiff avers that he is not liable in whole or in part to any or all of the claimants." The commentary which follows these interpleader rules recognizes the conflict between this new language, which seemingly eliminated the four classic requirements for an interpleader action, and the old common law practice. The note explains:

> Under the existing Maryland practice the plaintiff's activity in the case has to be at an end upon passage of the interpleader decree since one of the prerequisites of the action is that the plaintiff be an impartial stakeholder without any interest in the controversy. Under the federal rule, and under this Rule, the partiality of the plaintiff, or the assertion of an independent claim by him, is no longer an absolute bar. However, for purposes of awarding plaintiff costs and counsel fees, it was felt that the court should be empowered to make the award only if the plaintiff's position in the case was that of a "common-law" stakeholder.... Where the plaintiff is not an impartial stakeholder, he should be no better off than any other litigant with respect to costs and counsel fees.

Thus, the note suggests that in incorporating the federal rule's language into Rule BU70(a), it was intended that the no-independent liability requirement be eliminated.

In 1984, we adopted major revisions to the Maryland Rules to create "a coherent and easy-to-read body of civil rules, drawn from both Maryland and federal practice." Richards and Niemeyer, *supra*, at 1. In so doing, the Court in some instances retained the former Maryland practice and merely restyled the former rule while "[i]n other instances, federal practice was adopted with the conscious awareness that with it came a body of federal law that had

already developed in construing the federal rule." *Id.* With respect to Rule 2–221, the commentators noted that although the rule was newly written, it was "derived from both the former Maryland practice of Rule BU and the federal practice under F.R.Civ.P. 22." *Id.* at 105. The commentary adds that Rule 2–221(a) in particular "has language reminiscent of F.R.Civ.P. 22(1)" and that "the remainder of the rule adopts a practice that is sufficiently similar to the federal practice that the federal cases will be useful for interpretative guidelines." *Id.* at 105–06.

Since the adoption of the federal rule's language in 1961, we have not considered whether the revised rule abrogates the four classic requirements for maintaining an interpleader action.[4] In view of the great similarity between Rule 2–221 and Federal Rule 22, we have carefully reviewed the federal decisions on this subject, and find them persuasive in our own resolution of the issue. As the courts and commentators have noted, the language contained in both Rule 2–221 and Federal Rule 22—that the defendants' claims need not have a common origin or be identical—expressly abolishes the first two classic requirements that the defendants claim the same debt and that their claims be derived from a common source. Furthermore, the provision in Rule 2–221 that the stakeholder may bring an action in the nature of interpleader and "may deny liability in whole or in part to any or all of the defendants" abrogates the third requirement that the stakeholder may not claim any interest in the funds or property in its possession.

---

4. Sally suggests that *Mitchell Properties v. Real Estate Title*, 62 Md. App. 473, 490 A.2d 271 (1985), which cites *Steffey, supra,* in its discussion of interpleader, indicates that the four requirements set forth in *Steffey* remain viable under the modern rules. *Mitchell* relies on *Steffey* merely as authority for the proposition that the purpose of an interpleader action is to "allow[ ] the party holding the funds to avoid 'double vexation in respect of one liability.'" 62 Md.App. at 485, 490 A.2d 271, *quoting, Steffey, supra.* This statement in *Mitchell* simply describes the basic purpose of interpleader, which remains the same under the revised rules; the statement in no way resolves the question of whether the four classic requirements have been abolished.

Like its federal counterpart, therefore, Rule 2–221 specifically abolishes the first three traditional requirements for interpleader, but does not expressly resolve the issue of whether the stakeholder's independent liability remains as a bar to an interpleader action. Given the similarity between Rule 2–221 and Federal Rule 22, as well as the clear indication that Rule 2–221 is based in part upon the federal rule, we think those cases, both state and federal, which hold that independent liability is no longer a bar to an interpleader action, present the better reasoned view. We agree with those courts which have found that with abolition of the old procedural rules, which restricted joinder of parties and actions, and with the adoption of modern procedure which provides for liberal joinder of parties and claims and for separate trial of separate issues,[5] the historical reasons for restricting the use of interpleader are no longer viable. Thus, we hold that an interpleader action may proceed even when the defendant alleges that the stakeholder has incurred an independent liability. To the extent that *Steffey* is inconsistent with this holding, it is overruled.

## C.

In determining that the Bank may proceed with its complaint for interpleader, we do not adopt the Bank's ancillary contention that Rule 2–221(b)(4) requires that Sally be enjoined from prosecuting an independent claim against the Bank. That rule provides that the court may issue an order which "enjoin[s] the original defendants from bringing or prosecuting any other action affecting the property." A number of federal courts have addressed the general issue of the extent to which a court may enjoin a defendant from prosecuting a separate suit against an interpleading plaintiff, and the majority of these courts, including the Supreme Court, have held that the courts' injunctive power under the

---

5. In fact, Rule 2–221, unlike the federal rule, specifically provides that "[t]he provisions of this Rule supplement and do not in any way limit the joinder of parties permitted by Rule 2–212."

federal rule and the Interpleader Act is not so broad. *See, e.g., State Farm Fire & Cas. Co. v. Tashire,* 386 U.S, 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967); *Travelers Indemnity Company v. Greyhound Lines, Inc.,* 377 F.2d 325 (5th Cir.), *cert. denied,* 389 U.S. 832, 88 S.Ct. 101, 19 L.Ed.2d 91 (1967); *Knoll v. Socony Mobil Oil Co.,* 369 F.2d 425 (10th Cir.1966), *cert. denied,* 386 U.S. 977, 87 S.Ct. 1173, 18 L.Ed.2d 138 (1967); *Wasserman v. Fidelity and Deposit Co. of Md.* 490 F.Supp. 564 (S.D.N.Y.1979); *Empire Fire & Marine Ins. Co. v. Crisler,* 405 F.Supp. 990 (S.D.Miss.1976). As the Court stated in *Tashire,*

> The fact that State Farm [the stakeholder] had properly invoked the interpleader jurisdiction under § 1335 did not, however, entitle it to an order ... enjoining prosecution of suits against it outside the confines of the interpleader proceeding.... None of the legislative and academic sponsors of a modern federal interpleader device viewed their accomplishment as a "bill of peace," capable of sweeping dozens of lawsuits out of the various state and federal courts in which they were brought and into a single interpleader proceeding.... There is nothing in the statutory scheme, and very little in the judicial and academic commentary upon that scheme, which requires that the tail be allowed to wag the dog in this fashion.
>
> 386 U.S. at 533, 536, 535, 87 S.Ct. at 1205, 1206, 1206.

The majority of courts and commentators have interpreted *Tashire* to mean that "any injunction that is issued only can extend to litigation involving the fund that is the subject matter of the interpleader." Wright, *supra,* § 1717 at 619–20. Thus, in cases where a defendant alleges that the stakeholder is independently liable to him, the trial court may not enjoin a separate action against the stakeholder based upon this liability. *See, e.g., Knoll, supra,* 369 F.2d at 429 (holding that the court's jurisdiction in an interpleader action extends only to the fund deposited with the court, and thus the court could not enjoin the defendants from instituting any further action against the stakeholder); *Dakota, supra,* 552 F.2d at 1307 (finding that the fact that the

court in an interpleader action had jurisdiction over the defendant who was asserting an independent claim against the stakeholder does not mean that the defendant cannot pursue this claim separately nor does it limit the amount of damages in such an action).

■ Although Rule 2-221 differs from the federal interpleader rule in that the former specifically provides the court with the power to enjoin the defendants from prosecuting any other action while the latter does not,[6] we agree with those courts which have found that this injunctive power is limited to claims involving the interpleaded fund. In addition, where the defendant alleges an independent liability based upon tort or breach of contract, the defendant may be seeking punitive or consequential damages which exceed the interpleaded fund. As the Supreme Court indicated in *Tashire*, the stakeholder should not be allowed to avoid this additional liability simply by depositing a limited fund with the court. *See* 386 U.S. at 533-34, 87 S.Ct. at 1205-06. Consequently, we follow the lead of the federal courts and conclude that when a defendant in an interpleader action alleges that the stakeholder has incurred an independent liability, the court may not enjoin that defendant from prosecuting this claim in a separate action or limit the defendant's claim for damages to the fund which the stakeholder has deposited with the court.

■ The record indicates that Sally filed a separate suit against the Bank in the Circuit Court for Frederick County on May 24, 1988.[7] Having concluded that the court may not

---

6. The *Maryland Rules Commentary* indicates that while section (b) of Rule 2-221 sets forth provisions which are not included in the language of the federal rule, this subsection "of the rule adopts a practice that is sufficiently similar to the federal practice that the federal cases will be useful for interpretative guidelines." Richards and Niemeyer, *supra*, at 106.

7. Although the record does not include a copy of the complaint, it does indicate that this complaint contains four counts in which Sally alleges that the Bank is liable to her based upon a breach of its fiduciary responsibilities, conversion, negligence, and breach of con-

enjoin this suit, we must determine the appropriate action to be taken with respect to it. As we have indicated previously, the purpose of an interpleader action is to prevent the stakeholder from facing a "double vexation in respect to one liability." *Rockwell v. Carroll Ptg. & Pub. Co.*, 191 Md. 542, 547, 62 A.2d 545 (1948). Although the stakeholder in the present case may have incurred more than one liability, nevertheless, we believe that Rule 2–221's purpose of avoiding the double vexation arising from multiple suits can be achieved. Specifically, the trial court could, on its own initiative, order a joint hearing or trial or consolidation of the interpleader action with the suit filed by Sally as authorized by Rule 2–503. Rule 2–503 authorizes the trial court "[w]hen actions involve a common question of law or fact or a common subject matter" to order consolidation "of any claim, counterclaim, cross-claim, or third-party claim, or of any separate issue, or of any number of claims, counterclaims, cross-claims, third-party claims, or issues." In this way, the court may resolve the common issues in one action, while also furthering its own interest in effectuating judicial economy, as well as the parties' interest in avoiding the costs of multiple trials. *See generally* Richards and Niemeyer, *supra*, at 259.

Once the cases are consolidated, the court may choose to adopt the three step proceeding used by other courts in handling the logistical problems which arise when a defendant complicates an interpleader action by alleging that the stakeholder has incurred an independent liability. *See, e.g., Royal School Labs., Inc. v. Town of Watertown*, 358 F.2d 813, 817 (2d Cir.1966); *Dick, supra*, 334 So.2d at 927. Under this approach, the court first conducts the traditional two-step interpleader proceeding wherein the stakeholder deposits the money or property with the court and requests that the court issue an order requiring the claimants to litigate the issue of ownership among themselves. Ordi-

---

tract. The record does not indicate the amount of damages sought or if they include punitive or consequential damages.

narily, the stakeholder would be discharged from any further liability at this point, but when the issue of independent liability has been raised the stakeholder should remain in the suit until the third part of the proceeding. During the second part of the proceeding, the defendants litigate among themselves over the ownership of the fund or property. If the defendant who is alleging the independent liability prevails in this second stage and his claim is equivalent to the amount deposited with the court, there is no need to proceed further. If, however, this defendant is not successful or asserts a liability greater than the deposited fund, then the interpleader proceeds to a third stage wherein the defendant and the stakeholder litigate the question of the latter's independent liability to the former. *See* Chafee, *Modernizing Interpleader*, 30 Yale L.J. 814, 843 (1921).

## D.

The Bank also contends that the trial court erred in holding that the interpleader action was inappropriate based on its finding that no adversity existed between Sally and the Estate. Specifically, the court found that the defendants lacked adversity by virtue of Sally having waived any claim to the money in the Estate Account. A defendant, who alleges that a stakeholder has incurred an independent liability, often will forego any claim to the interpleaded fund and proceed against the stakeholder with a claim for damages based upon the stakeholder's independent liability and not upon the defendant's alleged ownership of the interpleaded property or fund. Because the defendant has disavowed any claim to the interpleaded fund, the question of whether the necessary adversity exists between the claimants arises. The majority of courts which have addressed this issue have held that so long as the defendants' claims are against the same plaintiff and are "inextricably interrelated," the adversity necessary to maintain the action exists despite the fact that the defendants do not seek payment out of the same fund. *Royal School Labs., Inc. v. Town of*

*Watertown, supra,* 358 F.2d at 815. *See, also, Dakota Livestock Co. v. Keim, supra,* 552 F.2d at 1307; *Hebel v. Ebersole, supra,* 543 F.2d at 17–18; *Stuyvesant Insurance Co. v. Dean Construction Co., supra,* 254 F.Supp. at 108–09. *But see Libby, McNeill, and Libby v. City Nat. Bank, supra,* 592 F.2d at 507–08 (finding that the necessary adversity for an interpleader action did not exist where one of the defendants had disclaimed any interest in the interpleaded fund, having chosen to base his claim strictly upon the stakeholder's independent liability). In *Dakota Livestock, supra,* the court indicated that the fact that the defendant, who was alleging that the stakeholder was independently liable to him, did not seek payment for the stakeholder's alleged tort out of the particular fund deposited with the court did not cause the parties to lose their adversity. The court explained,

> [w]e do not think that [the defendant] Zurcher can in effect surrender that fund to the Bank or to the Trustee [the other claimants] and thus avoid controversy with them while at the same time reserving his claim against Dakota [the stakeholder] by the simple device of turning his back on that particular fund. It is obvious that Zurcher can afford to take that action only because he feels that he can safely rely on the general assets of Dakota to satisfy any judgment that he may ultimately obtain against it. If Zurcher can thus avoid the jurisdiction of the interpleader court, so perhaps can any other defendant who has an independent claim against a solvent stakeholder. 552 F.2d at 1307.

We agree with the decision in *Dakota,* and hold that a defendant, who alleges that the stakeholder is independently liable to him, may not defeat an interpleader action simply by forsaking any claim to the particular fund which the stakeholder has deposited with the court. As the court indicated in *Dakota,* to allow the defendant to use this device would lead to the result that any defendant with a

claim of independent liability could defeat an interpleader action. This result would run contrary to the spirit and purpose of the interpleader rule. Therefore, the better approach is for the court to examine the basis of the defendants' claims against the stakeholder, and where they are "inextricably interrelated" the court may find that the necessary adversity exists to sustain an action in interpleader, despite the fact that the defendants do not claim the same particular fund.

In view of the cases, and the manifest purpose of Maryland Rule 2–221 in changing the common law rule, we think the trial court erred in dismissing the Bank's Complaint for Interpleader on the ground that Sally had asserted an independent claim against the Bank in a separate suit in the same court. Sally's claim and that of the Estate against the Bank are, we think "inextricably interrelated" in the sense contemplated by the cases sufficient to provide the necessary adversity between Sally and the Estate. The appropriate action in this case is to reinstate the Complaint for Interpleader and remand the case to the circuit court to order, pursuant to Maryland Rule 2–503, consolidation of Sally's claim against the Bank in the Interpleader action. Sally's claim against the Bank in the consolidated proceeding would not be limited to the amount of the interpleaded funds. Thus, the Bank's summary judgment motion against Sally that it be dismissed from any liability other than payment of the disputed funds into court was properly denied. *See Metropolitan Mtg. Fd. v. Basiliko,* 288 Md. 25, 415 A.2d 582 (1980).

JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY DISMISSING THE COMPLAINT FOR INTERPLEADER VACATED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REINSTATE THE ACTION AND FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO ABIDE THE RESULT.