DECISION
Before this Court are: a Motion to Strike a Defendant's answer to the First Amended Complaint; a motion for Summary Judgment in favor of the Plaintiff; a Cross-motion for Summary Judgment in favor of one Defendant; and a Cross-motion for Summary Judgment in favor of another Defendant. These motions arise out of an action where the Plaintiff seeks interpleader in a dispute over the ownership of an annuity. The Plaintiff, ING Life Insurance and Annuity Co., Inc., f/k/a Aetna Life Insurance and Annuity Co. ("ING"), made a Motion for Summary Judgment on Count I of its First Amended Complaint against the Defendants, decedent Deborah French's family (the Defendants are divided into three distinct groups: Phyllis Allsop, Mary Croce, Louis Croce, Nicholas Croce ("Croce Defendants"); Joseph French ("French"); and the Estate of Deborah French ("The Estate")). After ING filed its Motion for Summary Judgment, Defendant French filed a cross motion against ING for Summary Judgment and the Croce Defendants did the same. The Croce Defendants also filed a Motion to Strike Defendant French's answer to the First Amended Complaint. *Page 2 
 I FACTS AND TRAVEL
Prior to her death, Deborah French (to distinguish from Defendant French, hereafter "Deborah") owned an annuity through ING. When Deborah passed away, both the Croce Defendants and French claimed ownership of the ING annuity individually. The Croce Defendants assert that the annuity belongs to Mary Croce, Deborah's mother, because Mary Croce applied to purchase the annuity with Deborah as a co-owner and because she provided purchase money for the annuity. French, Deborah's widower, claims that he is the rightful owner of the annuity because ING issued the annuity to Deborah as the sole owner, and Deborah subsequently designated him as a beneficiary.
ING brought the original action seeking relief due to these conflicting claims over ownership of the annuity. In its original Complaint, ING sought to interplead the Defendants so that ownership of the annuity might be determined through litigation. In its interpleader claim, ING requested that the Court order ING to pay the value of the annuity into the Registry of the Court and that ING then be dismissed from the case and discharged from all liability in this matter. Finally, ING's interpleader claim sought injunctive relief from any further actions concerning the annuity brought against ING by the Defendants.
The Croce Defendants timely answered the original Complaint. French did not answer, and the clerk made an entry of default against him. This Court denied French's motion to have the entry of default vacated. ING and the Croce Defendants both made motions for an entry of final judgment of default against French and were both denied. Later, the Court allowed the Estate to intervene as a Defendant. *Page 3 
Each of the Defendants in this action asserts various counterclaims against ING. These sound in tort and contract. In essence, these claims assert that ING breached a duty of care owed to the Defendants by mishandling the application process and the formation of the annuity and that various harms (unique to each Defendant group) resulting from this alleged mishandling.
In 2008, ING moved for an order of interpleader under Rule 22 of the Rhode Island Superior Court Rules of Civil Procedure. This Court denied that motion. Subsequently, ING amended its complaint and added a claim for declaratory judgment as well as alternative relief on Count I of the Complaint. French timely answered this First Amended Complaint.
The motions that are the subject of this hearing were submitted in the Spring of 2010 and were scheduled to be heard in June of 2010. After reviewing the Parties' memoranda, the Court ordered the Parties to re-brief the issue of contract formation and to cite to legal authorities in support of their arguments. The hearing was continued until August 31, 2010. The Croce Defendants complied with the Court's request for additional briefing.
 II. STANDARD OF REVIEW Motion for Summary Judgment — Rule 56
On a summary judgment motion, the court must review the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. Chavers v. Fleet Bank (RI), N.A.,844 A.2d 666, 669 (R.I. 2004). On such a motion, the court is to determine only whether a factual issue exists. It is not permitted to resolve any such factual issues. The emphasis is on issue finding, not issue determination. O'Connor v. McKenna,116 R.I. 627, 633, 359 A.2d 350, 353 (1976); Palazzo v. Big GSupermarkets, Inc., 110 R.I. 242, 245, 292 A.2d 235, 237 (1972);Slefkin v. Tarkomian, 103 R.I. 495, 496, 238 A.2d 742 (1968). "Summary *Page 4 
judgment is appropriate if it is apparent that no material issues of fact exist and the moving party is entitled to judgment as a matter of law." Chavers, 844 A.2d at 669. A party opposing a motion for summary judgment "`carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions.'" Id. At 669-70 (quotingUnited Lending Corp., 827 A.2d at 631).
 III. INTERPLEADER
Rule 22 of the Rhode Island Superior Court Rules of Civil Procedure governs interpleader cases. The Rule states:
 "Persons having claims against the plaintiff may be joined as defendants and required to interplead when their clams are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that the plaintiff is not liable in whole or in part to any or all of the claimants. A defendant exposed to a similar liability may obtain such interpleader by way of cross-claim or counterclaim. The provisions of this rule supplement and do not in any way limit the joinder of the parties permitted in Rule 20." (Super. R. Civ. P. 22.)
The issue before the Court in regards to this Rule is whether a stakeholder, through a motion for interpleader, may properly be dismissed from an action and discharged of any liability in that action, where separate claims of liability against the stakeholder exist. Further, the court is asked to determine if the stakeholder should be granted injunctive relief barring any future claims related to the stake at issue. With no case law directly on point in Rhode Island, the Court looks to Federal and other state precedents for guidance. *Page 5 
In the past several decades, two distinct approaches to this Rule (adopted from a Federal statute) have developed. Some jurisdictions follow a traditional, hard line approach, while other jurisdictions have adopted a more modern, flexible reading of the Rule. Traditionally, when the stakeholder (usually the interpleading plaintiff) does not assert a claim to the stake, "the stakeholder should be dismissed immediately following its deposit of the stake into the registry of the court." Hudson Savings Bank v.Austin, 479 F.3d 102,107 (1st Cir. 2007) (citingComm'l Union Insurance Co. v. United States,999 F.2d 581, 583 (D.C. Cir. 1993). This dismissal occurs before the court adjudicates the disputes among the interpleading defendants.Id. However, under the traditional Rule, an order of interpleader is not available to an interpleading plaintiff who has incurred "independent liability" — liability over and above or in addition to the stake. Farmers Mechanics National Bank v.Walser, 316 Md. 366, 373 (Md. Ct. App. 1989) (citing 4 J. Pomeroy, EquityJurisprudence § 1322, at 906 (5th Ed. 1941)); see
Wright Miller, Federal Practice andProcedure § 1706 (3d Ed. 2010). This restriction of not allowing interpleader if there are independent claims of liability has softened in recent decades, but many jurisdictions still bar an order of interpleader where the stakeholder has some independent liability, for example in negligence. Wright Miller § 1706.
The modern trend dictates that rather than denying the interpleader motion outright when there are independent claims of liability, the court should grant interpleader in part and use a three step process. In the first step of this process, the stakeholder deposits the stake with the court. In step two, without the dismissal of the stakeholder from the case, the defendants litigate the issue of ownership among themselves. The third and final step involves the stakeholder litigating the matter of liability with the defendant who was not successful in the second step, or who asserted a liability beyond the stake.Farmers Mechanics National Bank v. Walser, 316 Md. 386 *Page 6 
(Citing Chafee, Modernizing Interpleader, 30 Yale L.J. 814, 843 (1921)). It should be noted that even under this more modern, flexible standard, where there are claims against the stakeholder for liability independent of the stake, the stakeholder does not warrant dismissal from the suit.Id. at 385-86. Furthermore, "the trial court may not enjoin a separate action against the stakeholder based upon this liability."Id. at 385. The stakeholder remains in the background of the case until the defendants have litigated ownership of the stake amongst themselves, then defendants' claims of independent liability proceed against the plaintiff. Id. at 386.
 A. Analysis of Motion for Summary Judgment Count I.
Before this Court, ING moves for summary judgment on Count I of its First Amended Complaint. (Pl.'s Mot. for Summ. J.) ING argues that it is entitled to relief on its interpleader claim because it is a stakeholder faced with multiple competing claims against the stake and the Defendants have no claims of liability that are independent from the single fund. (Pl.'s Mem. for Summ. J. pp. 2, 10.)
In ING's view, the proper course for an interpleader claim involves three steps: 1.) that the Court should order the Plaintiff to deposit the annuity with the Registry of the Court; 2.) that the Court should release and discharge the Plaintiff from any liability to the Defendants regarding the annuity and dismiss the Plaintiff from the litigation between the Defendants; and 3.) that the Court should enjoin the Defendants from pursuing other claims against the Plaintiff if they stem from the annuity. Id. At 11-12. Also in Count I of its Complaint, ING also seeks judgment dismissing the counterclaims against it with prejudice. The Croce Defendants object to ING's dismissal from the case and any injunction barring additional claims against ING. *Page 7 
In the alternative, ING claims that even if the Court finds that the above mentioned steps should not be followed due to independent liability claims, the modern trend still allows it limited relief and should be followed here. Id. at 16. The Court examines the three steps proposed by ING individually, as well as the proposed dismissal of the Croce Defendants and French's counterclaims, below.
In its analysis, this Court chooses to adopt the modern approach to dealing with an interpleader claim involving independent claims of liability. Based on the facts of this case, the Court finds that to do otherwise would be to create an unacceptable amount of wasteful litigation. By following the three steps outlined above by the Farmers Mechanics National Bank Court, certain issues presented before this Court and central to this action (such as which party will receive the annuity and what independent claims will be brought against ING) will be resolved and their resolution will allow the action to go forward in a more efficient manner. To do otherwise would submit this Court, the attending attorneys and the parties before it to a needless quagmire of litigation. Without the benefit of adhering to the modern approach, the dispute over the ownership of the annuity, ING's claims and the Defendants' counterclaims would be combined into a single, large and complex litigation. By using the modern approach this Court intends to clear the already muddied waters surrounding this action and promote the judicial efficiency that all parties to this dispute are entitled.
 Interplead the Res
In the first of ING's proposed steps it seeks relief in the form of a court order to deposit the value of the annuity, less the attorneys' fees and costs, into the Registry of the Court. (Pl.'s Mem. for Summ. J. p. 11.) The Croce Defendants raise no objection to this aspect of the claim; *Page 8 
therefore, this Court need not delve into any in depth analysis of the claim and orders that the full value of the annuity be entered into the Registry of the Court.
 Dismissal of ING from the action and Discharge of ING's Liability
ING requests that this Court dismiss ING from the action and discharge ING of any liability it may owe the Defendants in relation to the present annuity. All of the Defendants have raised objections to this aspect of the claim for summary judgment. The Croce Defendants argue that the law of the case doctrine prevents the Court from ruling differently on this motion than it did on ING's Rule 22 motion in 2008 and that most of the relief ING seeks through summary judgment is foreclosed because the Croce Defendants allege independent liability in their counterclaims.
 A. Law of the Case Doctrine
The Court will address the objection regarding the law of the case doctrine first. The Croce Defendants argue that the Court need not — and should not — reach the merits of ING's summary judgment motion under the law of the case doctrine. That doctrine states: "under the law-of-the-case doctrine, after a `judge has decided an interlocutory matter in a pending suit, a second judge on that same court, when confronted at a later stage of the suit with the same question in an identical manner, should refrain from disturbing the first ruling.'" State v. Graham, 941 A.2d 848, 856 (R.I. 2008) (quoting Richardson v. Smith, 691 A.2d 543, 546 (R.I. 1997)). However, questions are not presented in an identical way when motions are made under different rules of civil procedure with different standards. See Shayer v. Bohan,708 A.2d 158 (R.I. 1998) (Comparing a Rule 56 motion to remove a party from the litigation to a Rule 25(c) motion to substitute parties). Therefore, the Court must examine the motion on its merits. *Page 9 
In the instant case, ING's attempts to obtain interpleader relief have not been identical. The first motion was a Rule 22 motion while the instant motion is a Rule 56 motion. ING did not request alternative relief (i.e., the three step process under the modern rule in the event that the Court found that Defendants' counterclaims alleged independent liability) or declaratory judgment in its first motion. Therefore the Court concludes that ING's motion for summary judgment on its interpleader claim is not barred by the law of the case doctrine because it has not been presented in an identical way to its earlier Rule 22 motion.
 B. Independent Liability Claims
The court will next address the Croce Defendants' objection that ING is not entitled to summary judgment relief because their counterclaims are independent claims of liability. A leading treatise uses negligence "in processing a change of beneficiary form or policy assignment" as an example of a claim of independent liability. See Wright and Miller § 1706. In the instant case, the Croce Defendants point out in their memorandum in support of their objection to Plaintiffs Motion for Summary Judgment that some of their counterclaims against ING are contingent in nature — they will litigate their tort claims only if they do not prevail in the contest for the stake. (Croce Defs.' August 2010 Mem. p. 10.) Furthermore, the Croce Defendants assert that these claims are not related to the annuity, or who has proper ownership of it. Rather, the Croce Defendants allege that ING has damaged them through its mishandling of the annuity. Conversely, ING alleges that the Croce Defendants' claims are not claims of limited liability, that ING should not be denied interpleader relief, and that there are no material facts in dispute as to its eligibility for relief on its interpleader claim. (Pl.'s Mem. for Summ. J. pp. 11-12). The Court holds that the allegations of tort and negligence alleged by the Croce Defendants are independent of the dispute over the ownership and create claims for liability over and above *Page 10 
the amount of the stake. Neither the traditional nor the modern treatment of the Rule permit a stakeholder to be dismissed from an interpleader action if there are independent liability claims associated with the stake. ING's argument that the claims are not claims of independent liability is without merit.
Therefore, in accordance with the modern approach described above, this Court will grant the interpleader motion in part and allow the Defendants to litigate the issue of ownership of the annuity first, prior to litigating the independent claims. The Defendants shall submit a scheduling order to the Court, pursuant to Super. R. Civ. P.16.
ING will not be dismissed from the action, nor will the Court discharge it from any liability at this time. Instead, ING will remain in the background of the case and any independent claims of liability against ING will be addressed following the Defendants' litigation.
 C. Injunctive Relief
ING seeks injunctive relief preventing the Defendants from bringing any further claims relating to the annuity against it. TheFarmers Mechanics National Bank court concluded that the trial court's injunctive power is limited to "litigation involving the fund that is the subject matter of the interpleader."316 Md. at 383. The court continued:
 "In addition, where the defendant alleges an independent liability based upon tort or breach of contract, the defendant may be seeking punitive or consequential damages which exceed the interpleaded fund. . .the stakeholder should not be allowed to avoid this additional liability simply by depositing a limited fund with the court. . .Consequently, we follow the lead of the federal courts and conclude that when a defendant in an interpleader action alleges that the stakeholder has incurred an independent liability, the court may not enjoin that defendant from prosecuting this claim *Page 11 
in a separate action or limit the defendant's claims for damages to the fund which the stakeholder has deposited with the court." Id. at 384.
Accordingly, the court may enjoin the parties from filing suit relating to determining the rightful owner of the annuity; however the court may not enjoin the parties from pursuing claims of independent liability, such as tort claims. Before the court issues a restraining order, it must consider all four factors for a permanent injunction explained in such cases as Iggy's Doughboys,Inc. v. Giroux, 729 A.2d 701, 705 (R.I. 1999). To do otherwise would be an abuse of discretion. See DiDonato v. Kennedy,822 A.2d 179, 181 (R.I. 2003) (Injunction vacated where trial justice issued an injunction without considering the four factors from Iggy's Doughboys). The parties have not briefed the issue of whether ING is entitled to an injunction under Iggy'sDoughboys, despite the fact that a Justice of this Court alluded to this standard during discussion of a restraining order in a previous hearing on this case.[1] Therefore the Court denies ING's request for injunctive relief until it has demonstrated a fitness for such relief.
 Dismissal of Counterclaims with prejudice
ING, in addition to its request to be dismissed from the action and discharged of any liability related to the annuity, seeks to have the Defendants' counterclaims against it dismissed with prejudice. In keeping with the holding above regarding ING's interpleader motion, this Court cannot dismiss the Defendants' counterclaims at this time. The Court finds those counterclaims to be independent claims of liability. Therefore, the modern approach to interpleader claims involving independent claims of liability dictates that those claims will be *Page 12 
heard after the Defendants litigate the ownership of the stake. The Court will not comment on these claims at this time and reserves its ability to rule on them in the future.
 IV. DEFAULT
The Croce Defendants take the position that the Court must deny French's Motion for Summary Judgment and must grant the Croce Defendants' Motion for Summary Judgment as to French's claim because default has been entered against French for failure to timely answer the original complaint (Croce Defs.' April 2010 Mem. p. 11.) Defendant French, in his objection to the Croce Defendants' Motion to Strike his answer to the First Amended Complaint, citesGrieco v. Perry, 697 A.2d 1108 (R.I. 1997) for the proposition that, because the First Amended Complaint has supplanted and replaced the original Complaint, the entry of default based upon that complaint is no longer effective. Grieco does not stand for this proposition.
The Grieco plaintiff neglected to serve one of the defendants when he brought his initial complaint. 697 A.2d at 1108. Later, when he filed his first amended complaint, he served the defendant. Id. Then the Grieco plaintiff filed a second amended complaint, which he neglected to serve on the defendant.Id. After filing the second amended complaint, theGrieco plaintiff sought a default judgment against the defendant on the first amended complaint. In reversing the trial court's grant of the default judgment, the Rhode Island Supreme Court held:
 "We conclude that [the defendant] could not have defaulted on the first amended complaint. After. . .their second amended complaint . . . the first amended complaint was no longer an active pleading in the action . . . Professor Kent, in explaining Rule 15 [of the Rhode Island Superior Court Rules of Civil Procedure], notes that `[a]n amended pleading is a substitute for the original and supersedes it; the original no longer performs any function in the case. No pleading nor motion need be or *Page 13 
should be directed to it.'" Id. at 1109 (quoting 1 Kent, R.I. Civ. Prac., § 15.7 at 154 (1969)).
In cases such as Ness v. Digital Dial Communications,Inc., 596 N.W.2d 365 (Wis. 1999), courts have carved out an exception to the rule that an amended complaint supersedes prior pleadings. The Ness Court held that notwithstanding the "basic rule that an amended complaint supersedes the original complaint", "a defaulting party cannot answer an amended complaint, thereby attempting to cure its default, when the party is already in default at the time the amended complaint is filed." 595 N.W.2d at 370. The Ness Court based its holding on a Wisconsin statute that requires service of most papers related to a case to be served on every party, but exempts service of pleadings on parties who are already in default for failure to appear, unless the pleading includes a new or additional claim for relief.Id. Just as a defaulting party loses its right to notice of further pleadings under the Wisconsin statute, he or she "loses the right to answer the amended complaint and revive its defense."Id. at 371. In addition, the Ness Court was motivated by notions of fairness in reaching its conclusion.Id. at 372.
Rule 5 of the Rhode Island Superior Court Rules of Civil Procedure is substantially similar to the Wisconsin statute upon which theNess court based its holding. Rule 5 requires that "every pleading subsequent to the original complaint . . . and similar paper" be served upon each of the parties. Super. R. Civ. P. 5. However, "[n]o service need be made on parties in default for failure to appear except that motions for assessment of damages and pleadings asserting new or additional claims for relief against them shall be served upon them [.]" Id.
In Addition, the holding in Grieco is factually distinguishable from the case at bar. Whereas the Grieco
defendant was not yet defaulted when the second amended complaint was filed, the Clerk had already entered default against Mr. French when ING amended its complaint *Page 14 
to include a declaratory judgment count. Therefore, Mr. French may "cure" his default, at least to an extent, by answering the Amended Complaint only if the Amended Complaint asserts "new or additional claims for relief against [Mr. French]." Super. R. Civ. P. 5; Ness, 596 N.W.2d at n. 3
Here, ING amended its complaint to add a count for declaratory judgment concerning the same controversies that underlie its initial interpleader claim. (First Am. Compl. ¶¶ 27-8.) This declaratory judgment count does not seek relief "against" Mr. French. Thus Mr. French cannot cure his default by answering Plaintiffs First Amended Complaint. He remains in default.
There are compelling reasons to allow Mr. French to remain in this litigation. When parties fall out of an interpleader case — due to default, summary judgment, dismissal, etc. — the last party remaining typically is entitled to the res. See Sun LifeAssurance Company of Canada (U.S.) v. Conroy,431 F.Supp.2d 220, 226-27 (D.R.I. Apr. 21, 2006) (Holding that "[a] named interpleader defendant who fails to answer the interpleader complaint and assert a claim to the res forfeits any claim of entitlement that might have been asserted . . ." and "`if all but one named interpleader defendant defaulted, the remaining defendant would be entitled to the fund . . .'" (quoting Nationwide Mutualfire Insurance Co. v. Eason,736 F.2d 130, 133 n. 4 (4th Cir. 1984)). This Rule might put the trial justice in the untenable position of issuing a declaratory judgment that one interpleader Defendant (Mr. French) is entitled to the annuity but then having to award the annuity to a different interpleader Defendant (Mrs. Croce) simply because that Defendant is the "last man standing." (Presumably, if all Defendants but the Croce Defendants were to fall out of the case, three of the four Croce Defendants would stipulate dismissal.) A Justice of this Court contemplated precisely this type of quandary when the Court refused to enter a judgment of *Page 15 
default against Mr. French and allowed the Estate to intervene as an interpleading Defendant. See 10/30/2008 Hr'g Tr. pp. 18-20.
However, Defendant French remains in default and may not present evidence or argument. The Croce Defendants' Motion to Strike Defendant French's answer is granted over Defendant French's objection. Defendant French's Motion for Summary Judgment is denied.
 V. CONTRACT FORMATION
The Croce Defendants argue that they are entitled to summary judgment because "there should be no dispute that the Subject Annuity Account was jointly owned by Mary Croce" and Deborah French. (Croces' Mem. for Summ. J. pp. 3, 18.) The Croce Defendants argue that Mary Croce co-owned the annuity with Deborah French and that Mary Croce became the sole owner of the annuity by operation of law upon Deborah French's death. Id. Defendant French moves for a declaration that he is the rightful owner of the annuity and that the Croce Defendants do not have any claim to the annuity policy, funds, or proceeds. (French's Mem. Summ. J. pp. 1-2.) He bases his motion on an assertion that there is no evidence to support Croce Defendants' allegation that Mary Croce co-owned the annuity with Deborah French. (French's Mem. Summ. J. p. 7.)
As mentioned above, French is in default; and therefore, lacks standing to bring a motion on the instant litigation. Therefore, his motion is denied. The Croce Defendants' motion is also denied, as it is clear to the Court that there are issues of material fact regarding the formation and ownership of the annuity. *Page 16 
The Croce Defendants argue that the evidence is undisputed that Mary Croce and Deborah French completed an application form to co-own an annuity and that Joseph Reynolds, an AETNA Authorized Agent, manifested his acceptance of the mother and daughter's offer by signing the form. Further, Mary Croce paid for the annuity. The Croce Defendants argue Mr. Reynold's authority, either actual or apparent, as AETNA's agent bound AETNA and its successor in interest to the terms of the contract that day. The evidence that Mary and Deborah completed a form together, gave the form to Mr. Reynolds, and that Mr. Reynolds signed the form is undisputed. It is also undisputed that Mary Croce paid for the annuity. However, this evidence is subject to multiple legal conclusions, including the conclusion that no contract was formed that day. When the court considers a Summary Judgment motion, it must draw all reasonable inferences in favor of the non-moving party (here: ING and/or The Estate). Chavers v. Fleet Bank (RI),N.A., 844 A.2d 666, 669 (R.I. 2004).
The form that Mary Croce and Deborah French completed together is entitled "AETNA Customer Information." It is not labeled a contract or an agreement. It identifies Deborah as the Contract Holder and Mary as the Joint Contract Holder. Directly below the box identifying the joint holder is the language: "must be spouse of primary Contract Holder[.]" The form was signed by Deborah, Mary and Mr. Reynolds in a section marked "Disclosures and Signatures". There is no reference to the tender of an offer or acceptance of that offer. It reads: "I declare the information on this form is correct and true to the best of my knowledge. I also represent that the Social Security Number(s) shown on this form is/are correct." Disclosures follow this language including: "If Aetna cannot process my request within five business days after receiving it at its home office, Aetna may hold my form and payment." *Page 17 
Further evidence provided by ING indicates that AETNA received the form at its home office and noticed right away that Mary and Deborah were not married to each other and therefore were not eligible to co-own the annuity. This evidence shows that AETNA called Mary Croce and informed her that the company could not issue an annuity to the two women as joint contract holders. According to Gayle Williams of ING, Mary Croce consented to having AETNA issue the policy to Deborah French as sole owner.
Viewed in a light most favorable to the non-moving parties the evidence in this case does not support a conclusion that AETNA entered into a contract with Mary Croce. The Croce Defendants assume that the customer information form indicates that Mr. Reynolds accepted an offer. Rather, his signature could just as easily mean that he was attesting to the accuracy of the information provided on the form. This evidence, viewed in the light most favorable to the non-moving parties, supports the inference that no contract was formed in Mr. Reynolds's office that day. Furthermore, had a contract been formed, it could have been modified by Mary Croce's telephone conversation with Gayle Williams of AETNA. For these reasons the Court does not find it proper to grant the Croce Defendants' Motion for Summary Judgment with regards to the contract formation issue. That motion is denied.
The Court notes that the Croce Defendants cite Nationwide LifeInsurance Company v. Steiner, a recent case from the United States District Court in the District of Rhode Island, for the proposition that ING should be estopped from arguing that no contract was formed by virtue of the fact that AETNA's customer information form states that co-owners must be married to each other. No. 09-235S, ___ F.Supp.2d ___,2010 WL 2766667 (D.R.I. July 13, 2010). The question confronting theNationwide Life Insurance court was "whether an insurer must honor its policy when the application was incomplete, but the insurer retained the premium and delivered *Page 18 
the contract anyway." Id. at *6. The Croce Defendants' reliance on this case at this juncture is unavailing, because, as discussed above, there is contradictory evidence regarding whether AETNA did in fact accept the faulty application, take payment and issue the annuity or whether AETNA accepted the form, noticed the deficiency, contacted Mary Croce to address the deficiency, and then issued the annuity to Deborah French only.
The Croce Defendants also devote their attention to Mr. Reynolds's actual or apparent authority. Given the conflicting inferences regarding what Mr. Reynolds's signature actually appears on and the possibility that any contract that may have been formed was later modified by oral agreement with Gayle Williams, consideration of the issue of Mr. Reynolds's authority is unnecessary at this time.
 LAST MAN STANDING
The Croce Defendants move for partial summary judgment on the issue of ownership of the annuity. (Croces' Mem. for Summ. J. p. 1.) The Croce Defendants argue that neither Defendant French nor the Estate is entitled to the annuity; therefore the Croce Defendants are entitled to it as the "last man standing." Id. at 2-3. They argue that French is out of contention for the annuity because he is in default. Id. The Estate is out of contention, the Croce Defendants argue, because it has not taken the position that it is entitled to the annuity or presented evidence that it is entitled to the annuity. Id. at 3, 18.
The Croce Defendants argue that the Court should grant them summary judgment against the Estate because the evidence shows the estate of a deceased policy holder gets the annuity in only extremely limited circumstances. (Croces' Mem. for Summ. J. p. 19.) One of these circumstances is when there is no designated beneficiary at the time of the owner's death. *Page 19 
(Croce Defs.' Ex. I at § 4.03.) The Croce Defendants argue that because there is no evidence that the annuity was ever without a designated beneficiary, the Estate cannot show that it is entitled to the annuity. Id. at 20.
The Croce Defendants' point about the dearth of evidence that the annuity has ever been without a designated beneficiary has merit. Following the discussion above, the facts support two possible outcomes regarding the beneficiaries of the annuity. On one hand, if AETNA formed a contract with Mary Croce (and did not modify it), which would mean any subsequent change of beneficiary forms would be inoperative and the original beneficiaries — Phyllis Allsop and Nick Croce — would still be beneficiaries today. On the other hand, if AETNA never formed a contract with Mary Croce and Deborah French was the sole contract holder, then all of Deborah's change of beneficiary forms would be properly submitted and Defendant French would be the beneficiary. In either circumstance the annuity was never without a beneficiary.
A review of a prior Court ruling on the Estate's motion to intervene provides reasons for allowing the Estate to remain in the litigation notwithstanding its extremely limited contractual claims to the stake. See Croce Defs.' Ex. S, Tr. of 10/30/2008 hearing. The Justice at the October 2008 hearing contemplated the difficulty that the trial justice would have if he or she had to issue contradictory rulings with regards to ownership of the stake — that is, if the justice issued a declaratory judgment that Mr. French is the owner of the annuity, but nonetheless was foreclosed from awarding the stake to Mr. French because he is out of the litigation. (10/30/2008 Hr'g Tr. 17:4-11.) In this situation, the annuity would be without a beneficiary. Id
For the foregoing reason, the Court denies the Croce Defendants' Motion for Summary Judgment on the issue of entitlement to the stake by virtue of being the "last man standing." *Page 20 
The Estate is still party to the litigation and in contention for the stake; therefore the Croces are not the last Parties participating.
 CONCLUSION
In conclusion, the Court will grant the Croce Defendants' Motion to Strike Defendant French's answer; and it will also deny Defendant French's Motion for Summary Judgment.
The Court will also deny the Croce Defendants' Motion for Partial Summary Judgment. As explained above, there are disputed issues of material fact regarding whether Mary Croce became an owner of the stake by operation of law. In addition, the Croce Defendants are not entitled to summary judgment as the "last man standing" in an interpleader action.
ING's Motion for Summary Judgment is denied in part and granted in part as explained above.
Counsel shall prepare an Order in accordance with this Court's Decision.
[1] See 10/30/2008 Hr'g Tr. 7:20-8:1. In the context of a motion for default judgment, the justice stated: "you want me to issue a restraining order which, quite frankly, requires an evidentiary hearing. I can't-whether or not someone should be restrained is — the Court has to go through a balancing and weighing analysis. So you're asking me for equitable relief on papers instead of an evidentiary hearing."