Commonwealth ex rel. Sternberg *v.* Sternberg,
Appellant.

Argued March 18, 1957. Before Rhodes, P. J., Gun-THER, Wright, Woodside, Ervin, and Watkins, JJ. (Hirt, J., absent).

*Harry Fischer,* for appellant.

*Robert H. Arronson,* with him *Herbert H. Hadra,* and *Maurice Freedman,* for appellee.

Opinion by Gunther, J., June 11, 1957:

This appeal involves the propriety of the order of the court below in support proceedings wherein the appellant, Hyman Sternberg was ordered to pay accumu-

lated arrearages to his wife from the cash surrender values of certain life insurance policies. On February 2, 1951, the Municipal Court of Philadelphia County entered an order of support against appellant and in favor of his wife in the sum of $7.00 per week. Thereafter, appellant attempted to have this order revoked but on December 31, 1953, the court below dismissed the application and continued in force the original order. This order also made provision for the payment of arrearages at the rate of $3.00 per week.

Upon failure of appellant to comply with the support order, an attachment was issued and a hearing was held on January 1, 1956. Appellant's son, Joel Sternberg, was subpoenaed to appear and ordered to produce certain life insurance policies on the life of appellant which he had in his possession. The son testified that he had possession of five insurance policies on the life of his father; that he has been paying the premiums on these policies for the past five or six years; that in addition, he paid hospital expenses and convalescent home expenses incurred within the previous year. The total cash surrender values and accumulated dividends on these policies amounted to $14,725.01.

Appellant is 75 years of age and his wife is 69. At the time of hearing a court appointed physician testified that appellant was placed in a home for the aged for approximately a year; that he has attempted suicide on two previous occasions; that physically he maintained himself fairly well but that he has deteriorated mentally. No evidence was produced to show who in fact was the real owner of the policies in question or whether any of the policies may be exempt from attachment for any reason, or whether the cash surrender value of these policies may be or legally could be used for the support of appellant's wife.

After hearing the court below entered an order directing appellant to pay the sum of $1,058.00 on account of accumulated arrearages. In addition the court ordered: "If for any reason said defendant is unable to pay this amount, he shall within thirty (30) days from this order make application for funds either by cash surrender or loan on full paid insurance policies Nos. 6,588,282—8,086,170—8,079,111 owned by him and issued by the New York Life Insurance Company, to the extent required for payment of the arrearages on the support order." From this order, appellant sought a supersedeas which was refused by the court below.

On July 17, 1956, we granted special supersedeas only insofar as the order directed the disposition of the insurance policies for the payment of the arrearages, and stated that such supersedeas shall not relate to or affect any other action that the court below may take upon failure of appellant to comply with its order in respect to payment of said arrearages.

The sole question on this appeal, therefore, is whether the court below could legally compel appellant to cash his policies to pay for the accrued arrearages, or failing to comply, whether the appellant could be attached for contempt.

In *Commonwealth v. Berfield,* 160 Pa. Superior Ct. 438, 51 A. 2d 523, we have stated that a wife, in seeking support, may look to a fund payable to her husband however safeguarded by law or by the language of its creation from attachment by others. See also *Commonwealth v. Mooney,* 172 Pa. Superior Ct. 30, 92 A. 2d 258; *Commonwealth ex rel. DiVirgilio v. DiVirgilio,* 182 Pa. Superior Ct. 475, 127 A. 2d 774. However, the question here involved is not whether the wife may attach in regular proceedings the proceeds of a life insurance policy or the dividends issued thereon, but whether the court, in contempt proceedings for the

failure to comply with an order for payment of money, can compel the owner of such policies to surrender them for their cash value. As stated by the court below, "The respondent is before us on attachment in contempt."

We are of the opinion that so much of the order which compels the cashing of the policies involved cannot stand. Such an order, first of all, would compel the son to turn over policies admittedly in his possession without determining whatever rights, if any, he might have in such policies. No determination on this point has been made by the court below. The son was not a party litigant in these proceedings but merely a witness who appeared under a subpoena. On this issue, he has not been heard. As stated by our Supreme Court in *Hess v. Westerwick*, 366 Pa. 90, 76 A. 2d 745: "It is a fundamental provision of both our state and federal constitutions that no person shall be deprived of property except by the law of the land or due process of law. Without due process of law the right of private property cannot be said to exist." To compel, therefore, appellant under the sanction of contempt to surrender the policies in question for cash, without determination as to whether he has any right so to do and without determining that the son has no interest which might be prejudiced thereby, cannot be permitted.

Secondly, the question before the court below was the failure of appellant to comply with its order. As stated by Judge HIRT in *Commonwealth v. Berfield*, supra, "we have no doubt as to the authority of the court to attach the person of respondent, in contempt for failure to comply with the order of the court, though the effect of the attachment may be to compel him to support his wife out of annuities", but here the order does more than that. The order compels him to

do something else than the payment of money, regardless of the ultimate outcome. To purge himself of contempt, appellant would have to comply with the payment of money and not to surrender his policies. The determination of contempt is the failure to pay when ordered and not the failure to surrender the policies. The court may adjudicate this as the contempt and deal with appellant accordingly. How he will purge himself of contempt is another matter.

So much of the order of the court below which directs the disposition of certain insurance policies for the payment of arrearages for support is reversed.