508 F.2d 129
 PROVIDENT MUTUAL LIFE INSURANCE COMPANY OF PHILADELPHIA,
Appellant in No. 74-1353,
v.
Selma EHRLICH, Appellant in No. 74-1354, Shirley Ehrlich
a/k/a Shirley Joan Ehrlich, Shirley Ehrlich a/k/a
Shirley Joan Ehrlich, Executrix of the
Estate of Edward H. Ehrlich, Deceased.
 Nos. 74-1353 and 74-1354.
 United States Court of Appeals, Third Circuit.
 Argued Nov. 19, 1974.
Decided Jan. 27, 1975.
 
 J. Stokes Adams, III, Philadelphia, Pa., for appellant, Provident Mutual Life Ins. Co. of Philadelphia; Hart, Childs, Hepburn, Ross & Putnam, Philadelphia, Pa., of counsel.
 Jay D. Barsky, Philadelphia, Pa., for appellant, Selma Ehrlich.
 M. Stuart Goldin, Isenberg, Goldin & Blumberg, Philadelphia, Pa., for appellee, Shirley Ehrlich.
 Appeal from the United States District Court for the Eastern District of Pennsylvania (C.A. No. 73-199).
 Before ADAMS, GIBBONS and WEIS, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 The break up of a family is an unhappy affair whose consequences linger on long after the event and often involve strangers as well as those directly concerned. In this case a life insurance company finds itself in the unpleasant position of being beset by competing claims of two wives of a deceased insured. While both have sympathetic appeal, we conclude that only one can prevail here. The decision of the district court in making an award to both women, while somewhat solomonic in nature, we find to lack legal support.
 
 
 2
 Dr. Edward Ehrlich left his wife, Selma, and four children in the family home in Philadelphia in 1966 and moved to Nevada where he later secured a divorce and married Shirley. Some years before, he had taken out a life insurance policy with the Provident Insurance Company naming Selma, the first wife, as beneficiary. After the second marriage, he wrote to the insurance company requesting that Shirley be designated as beneficiary. The company declined to change the designation on its records because of pending litigation brought by Selma.
 
 
 3
 When Dr. Ehrlich died in 1972, both wives claimed the proceeds of the policy. Provident filed an interpleader in the United States District Court for the Eastern District of Pennsylvania and paid the proceeds into the court. After a trial, the district court held that Shirley had been legally designated beneficiary and was entitled to the proceeds. The court also decided that Selma was entitled to recover an equivalent amount from the insurance company because of equitable estoppel, 374 F.Supp. 1134. We affirm as to Shirley but reverse as to Selma.
 
 
 4
 The policy, which originally named Selma as the beneficiary, was in the face amount of $25,000 and was issued to Dr. Ehrlich on December 9, 1962. One of the policy provisions was that the insured reserved the right to revoke and change the beneficiary.
 
 
 5
 It was on or about October 6, 1966 that Dr. Ehrlich left Philadelphia permanently, and on October 25, 1966, Selma brought an action against him under the Act of 1907, P.L. 227, 48 P.S. 132, in the Common Pleas Court of Philadelphia County. This statute provides that, in the event of failure to provide for the support of his wife and children, proceedings may be instituted against any real or personal property of the husband and the court may direct a seizure and sale of sufficient assets to provide funds for the maintenance of wife and children.[1]
 
 
 6
 On November 10, 1966, the state court appointed a receiver for the real estate of the husband which had been specifically described in the complaint and directed that the property be sold. The order further provided that 'the Receiver is hereby authorized: (a) To seize and take possession of all the property, assets and effects of the defendant not limited to those above described or referred to wheresoever situate or found.' Dr. Ehrlich received notice of this order although he was never personally served and did not subject himself to the jurisdiction of the Philadelphia court. On November 23, 1966, the attorney for Selma sent a copy of the court order to the Provident Insurance Company along with a letter requesting information on the amount of a quarterly premium which was soon due.
 
 
 7
 On December 28, 1966, Dr. Ehrlich divorced Selma in a Nevada proceeding and married Shirley on the same day. As part of the divorce decree, the doctor was ordered to make support payments of $100 per month per child until emancipation, with credit to be allowed for the assets attached in the Pennsylvania court proceeding. Ehrlich established a medical practice in Nevada and continued to live there until his death some six years later.
 
 
 8
 Dr. Ehrlich wrote to the Provident on February 20, 1967, saying:
 
 
 9
 'Please send me forms for change of beneficiary as well as the policy numbers which I have with you. My agent, C. E. Tobias, has not answered my request for this information in a letter dated Dec. 2nd, 1966. Perhaps you can roust him out. 'At any rate, this letter will serve in lieu of an official form until I can complete one. 'Change primary beneficiary from Selma Ehrlich to Shirley Ehrlich.'
 
 
 10
 In-house counsel for Provident responded on March 2, 1967, advising that the company could not permit the doctor to deal with the policies because of the November 10, 1966 order of the Philadelphia court.
 
 
 11
 After receiving premium notices from the company on May 2, 1967, Dr. Ehrlich wrote again on May 10:
 
 
 12
 'I have a letter from your legal department 3/3/67 stating that because I am in receivership in Penna. you cannot change the beneficiaries of my life insurance. In this case allow the policies to lapse. If you can change the beneficiaries, I will continue the policies.'
 
 
 13
 On May 17, 1967, Provident wrote Selma's attorney inquiring 'whether this matter has progressed to the point whereby it might be permissible for Doctor Ehrlich to effect changes of beneficiaries . . .' Selma's counsel responded on May 19 that he did not agree to any change of beneficiary and further opined that the cash surrender value was subject to the court order and, accordingly, that the receiver was entitled to these proceeds. The company's in-house counsel replied by letter on May 22, 1967, stating that the cash values, in accordance with the contract, would be used for the purchase of extended term coverage. The letter concluded: 'Mrs. Ehrlich's rights, of course, are fully protected in that she is continued as beneficiary for the period covered by the two policies placed under extended term . . .'[2] On that same day the company also wrote to Dr. Ehrlich and in referring to the court order stated, 'This is a matter of law over which we have no control. Thus we are unable to effect a change in beneficiary designation . . .'
 
 
 14
 Selma never secured a court order specifically reciting any interest in the policy or directed to Provident. On October 18, 1967, the receiver was released by the court after accounting for the sale of real estate and collection of debts owed to the doctor by various patients.
 
 
 15
 Logically, the first question to be answered is-- who is the legal beneficiary?
 
 
 16
 Pennsylvania law, which the parties have considered applicable here, is to the effect that when an insured wishes to change the beneficiary, he can do so without strict and literal compliance with the policy terms. Thus, it is not always necessary that the form supplied by the company be used or that the change be endorsed on the policy. Substantial stantial compliance with policy provisions is sufficient. All that is required is that every reasonable effort under the circumstances be made to effect the change. Kit v. Stecker, 109 F.2d 281 (3d Cir. 1940); Ruggeri v. Griffiths, 315 Pa. 455, 173 A. 396 (1934); Riley v. Wirth, 313 Pa. 362, 169 A. 139 (1933). Cf. Breckline v. Metropolitan Life Insurance Co., 406 Pa. 573, 178 A.2d 748 (1962). See also Couch on Insurance 2d 28.66; Vance on Insurance 109 (3d ed.).
 
 
 17
 Here, Dr. Ehrlich wrote twice to the insurance company and once to the agent, advising of his desire to change the beneficiary. The insurance company refused to honor the instructions of its insured and would not even forward the standard forms.
 
 
 18
 From the tenor of Provident's letters, it is clear that even if the insured had used the company forms and had forwarded the policy, the company's reaction would have been the same since it felt bound by the state court order.[3] Under the circumstances, therefore, we cannot say it was error for the district court to find that the insured made every reasonable effort to comply with the policy requirements.[4]
 
 
 19
 The district court held also that the order of the Philadelphia Common Pleas Court was ineffectual to prevent a change of beneficiary. We agree with the reasoning of the trial court that the Act of 1907 provides for an in rem proceeding and that Selma did not comply with the procedures necessary to subject the insurance contract to the Common Pleas Court order. Although the company had its headquarters in Philadelphia, it was never formally served,[5] and of more significance there was no compliance with the requirements set forth by the Supreme Court of Pennsylvania in Jones v. Jones, 344 Pa. 310, 312, 25 A.2d 327, 328 (1942):
 
 
 20
 'It is imperative if service cannot be made on the principal defendant in the jurisdiction of the court that there be property, 'real or personal', within that jurisdiction and that the property of the defendant which the court is asked to seize be specifically set forth in the bill: Boudwin v. Boudwin, 320 Pa. 147, 150, 182 A. 536.'
 
 
 21
 Therefore, even if it be assumed, arguendo, that Provident was in possession of 'property' of the insured, the failure to comply with state law by specifically itemizing that 'property' rendered the Common Pleas Court order legally ineffectual as to the insurance company. Thus, there was no legal barrier to prevent. Dr. Ehrlich from changing the beneficiary, and the district court was correct in finding that Shirley was entitled to the proceeds of the policy.
 
 
 22
 Although the nature of the insured's interest need not be considered in resolving Shirley's claim, it is pertinent to the second issue presented-- Selma's counterclaim based on equitable estoppel. The insured had the right under the policy to change the beneficiary. The company had no contractual right to refuse such a change, other than to insist on formal or ministerial procedures.[6] As has been seen, if circumstances or the insurer's conduct prevent the fulfillment of these ministerial requirements, the company cannot insist upon them. Furthermore, since these procedures are for the protection of the insurance company, the original beneficiary has no right to insist upon compliance. Petrik v. National Slovak Union, 136 Pa.Super. 308, 7 A.2d 60 (1939).
 
 
 23
 It may be seen, therefore, that what is involved is a right of the insured, personal to him, to make a change pursuant to the contract. This privilege cannot be abrogated by the insurance company in the absence of a statutory provision or consent by the insured, and it cannot be assigned or transferred by the company. It is a purely personal right. Although an insured may be bound by a contract with a third party to refrain from changing a beneficiary or be similarly inhibited by a divorce or support decree,[7] such instances are founded on either consent by the insured or jurisdiction over his person. Those factors were lacking here. The Philadelphia court had no personal jurisdiction over the one person able to make a change in the policy-- that is, Dr. Ehrlich.[8]
 
 
 24
 There is no statute in Pennsylvania goving an insurance company the right to refuse a change of beneficiary under circumstances such as these, nor is there any power in a local court to make such an order upon the insurance company in the absence of personal jurisdiction over the insured.[9]
 
 
 25
 Thus, we find no basis to hold that the Court of Common Pleas would have had any authority to prevent the change of beneficiary by enjoining the insurance company.
 
 
 26
 Selma's counterclaim is based on the theory that she relied to her detriment on the representation of the company's in-house counsel that she was continued as beneficiary. She asserts that if such assurances had not been given, she would have secured an order from the Common Pleas Court specifically directed to the insurance company. Since in our view such an order would have been to no avail, even if it had been obtained, she suffered no detriment, and consequently there is no basis for recovery.
 
 
 27
 There is another reason why Selma cannot succeed. In her briefs filed in this court, she states flatly that there was no reliance upon any legal opinion which might have been implicit in the company's letter of May 22, 1967 but that prejudice occurred solely because of a factual representation in that letter.
 
 
 28
 The difficulty with her position is that from a factual standpoint there was no misstatement by the company. It did not change the beneficiary on its records, which continued to reflect Selma as the beneficiary. Insofar as it was within the company's power to control the situation, she was continued as the beneficiary. The change did not come about by any voluntary act on the part of Provident but by operation of law.
 
 
 29
 Both the insurance company and Selma's lawyer were aware of the same facts. Both knew or could have learned of the legal effect of the factual situation, namely, that the insurer's unilateral action could not impair the policy owner's ritht to change the beneficiary.
 
 
 30
 In denying recovery based on an estoppel theory, a Pennsylvania appellate court said, 'Both parties were equally familiar with the underlying facts of their relationship and it is unrealistic to hold that plaintiff relied on defendant's answer any more than on his own independent judgment.' Ham v. Gouge, 214 Pa.Super. 423, 425-426, 257 A.2d 650, 652 (1969). There was no factual misrepresentation by the insurance company here. The error was in the legal interpretation placed on the facts-- an area where the parties were on an equal footing. On this basis, also, there is no liability on the insurance carrier.
 
 
 31
 Even if it be assumed, arguendo, that a Common Pleas order directed to the company could have affected Dr. Ehrlich's rights, then the error in failing to secure it cannot be chargeable to the insurer. Selma's attorney relied on the factual information received from the company. He was bound to know that a voluntary forbearance on the part of the insurance company could not adversely affect the legal rights of the insured. The company was not the agent of the doctor. If his rights could have been affected by the court decree, then it was necessary that Selma arrange for service upon the company of an order of seizure. Only then could the court's order have whatever legally binding effect it possessed on Dr. Ehrlich's rights. Although, in the circumstances here, it might be found that the company had waived service as to itself,[10] it had no authority from its insured to waive any of his prerogatives. This, again, was not a factual matter but a legal problem whose solution remained with Selma's lawyer. We make this point only to illustrate again the lack of detriment occasioned by the company's letter, not to imply liability upon the part of Selma's counsel. As we concluded earlier, the Common Pleas Court had no power to prevent a change of beneficiary in this situation, and therefore her lawyer could not have influenced that result.
 
 
 32
 As one of the prayers for relief in the interpleader, the company requested an injunction against the prosecution of suit in the Court of Common Pleas of Philadelphia-- Selma Ehrlich v. The Provident Mutual Life Insurance Company at No. 2728 November Term, 1972. Since that suit sought to establish the claim of Selma as a beneficiary and the rights of the parties have been fully adjudicated in this case, the requested relief should be granted. 28 U.S.C. 2361.
 
 
 33
 The judgment in favor of Shirley Ehrlich will be affirmed. The judgment in favor of Selma Ehrlich will be vacated, and the matter remanded to the district court for the entry of an appropriate order.
 
 
 
 [1]
 '132. Proceedings against husband's property; sale or mortgage; service of process
 'Whenever any man has heretofore separated, or hereafter shall separate, himself from his wife of children, without reasonable cause, or whose whereabouts are unknown, and, being of sufficient ability, has neglected or refused or shall neglect or refuse to provide suitable maintenance for his said wife or children, proceedings may be had against any property real or personal of said husband necessary for the suitable maintenance of the said wife or children; and the court may direct a seizure and sale, or mortgage, of sufficient of such estate as will provide the necessary funds for such maintenance; and service upon the defendant shall be made as in other actions, at law or in equity, or in the manner provided in the act of General Assembly, entitled 'An act to authorize the execution of process in certain cases in equity, concerning property within the jurisdiction of the court, and on the defendants not resident or found therein' . . .'
 
 
 [2]
 One of the two policies lapsed before the death of Dr. Ehrlich and is not involved in this suit
 
 
 [3]
 The deposition of an attorney employed by Provident reflected the following exchange:
 'Q. I don't want to twist your testimony, isn't that the way it works, that when wife No. 1 makes a noise or her lawyer makes a noise and husband is attempting to change the beneficiary to wife No. 2, you tell the company to refrain from noting wife No. 2 on the policy as long as those noises and activities by wife No. 1 and her lawyer go on?
 'A. That's true, yes.'
 
 
 [4]
 In reliance upon such cases as Riley v. Wirth, 313 Pa. 362, 366, 169 A. 139, 140 (1933), the district court stated that the payment of the proceeds of the policy into the court registry acted as a waiver by the company of the formal policy requirements for change of beneficiary. However, we think that the better view is set out in Vance on Insurance (3d ed.). In 109 at 690, the author wrote:
 '. . . the insurer does not by an interpleader or other act performed after the insured is dead transfer any rights from one claimant to the other. The insurer merely indicates by its action that it has not paid out the policy proceeds in reliance on the policy provisions relative to change in benefit and hence the courts need not apply an exception in order to protect the insurer, but on the other hand, they may apply the usual rule of substantial compliance.'
 
 
 [5]
 It may be that the company waived, as to itself, any objection to lack of formal service upon it. That issue, however, is not controlling at this point in our decision and we do not rely upon it. Whether the company had the authority to waive service and 'seizure' so as to affect the rights of its insured, however, is another matter which will be discussed infra
 
 
 [6]
 The policy provided:
 'CHANGE OF BENEFICIARY. The beneficiary is the person or party named in or designated by endorsement on this policy to receive the proceeds hereof if the same shall become payable by the death of the Insured. The Insured, if of full age, may change and successively change any revocably designated beneficiary and may declare the designation of any beneficiary to be irrevocable . . . Every change of beneficiary must be made in writing and filed with the Company at its Home Office, accompanied by this policy, and the Company shall be charged with notice of such change only when endorsed on this policy by the Company . . .'
 Note that this provision does not state that the change will be effectual only when endorsed on the policy but that only then will the company be charged with notice.
 
 
 [7]
 See Couch on Insurance 2d 28:41. The record reveals that Selma brought an action for support against her former husband in Nevada where he was residing. Although that court would have had personal jurisdiction over the husband and perhaps could have enjoined him from exercising his right to change beneficiaries, we find no indication that Selma pursued this course of action in those proceedings
 
 
 [8]
 Certain Pennsylvania cases have upheld the attachment of intangible contractual rights belonging to a husband who is outside the personal jurisdiction of the court in order to get at a res located in the state which could be used for a wife's support. See, e.g., Crane v. Crane, 373 Pa. 1, 95 A.2d 199 (1953) (shares of stock of a Pennsylvania corporation); Jones v. Jones, 344 Pa. 310, 25 A.2d 327 (1942) (future interest in a trust res located in Pennsylvania). Luick v. Luick, 164 Pa.Super. 378, 64 A.2d 860 (1949) (assets of a partnership located in Pennsylvania). Cf. Cook v. Cook, 115 P.L.J. 165 (1966) (retirement fund stemming from a Pennsylvania employment contract). The case sub judice, however, concerns insurance proceeds which were nonexistent in the time period when Selma could have petitioned Common Pleas Court for a supplemental order. There was no fund in Pennsylvania until Dr. Ehrlich died in 1972, and when that occurred, there was no longer a duty to provide support or maintenance
 
 
 [9]
 Furthermore, there is substantial doubt that a court having personal jurisdiction over a husband can order him to obtain the cash surrender value of policies from an insurance company, Commonwealth v. Sternberg, 184 Pa.Super. 216, 132 A.2d 770 (1957), and it seems that a wife cannot attach the insurance company to obtain the cash surrender of policies owned by her husband. Taylor v. Taylor, 36 Pa.D. & C. 320 (C.P.Phila.) (1938); Commonwealth v. Gault, 21 Pa.D. & C. 420 (M.C.Phila.) (1934)
 
 
 [10]
 See note 5, supra