896 F.Supp. 412 (1995)
Lisa Nassar STICKNEY and George J. Nassar, Plaintiffs,
v.
MUHLENBERG COLLEGE TIAA-CREF RETIREMENT PLAN, Defendant,
v.
Hiyam N. NASSAR, Counterclaim/Interpleader Defendant.
Civ. A. No. 94-4759.
United States District Court, E.D. Pennsylvania.
August 3, 1995.
*413 R. Michael Carr, LaBrum & Doak, Bethlehem, PA, for plaintiffs.
Mary Kay Brown, Buchanan Ingersoll Professional Corp., Philadelphia, PA, for Muhlenberg.
Gerald M. Barr, Barr & McGogney, Allentown, PA, for Hiyam Nassar.

MEMORANDUM
RAYMOND J. BRODERICK, District Judge.
Presently before the Court are plaintiffs Lisa Nassar Stickney and George J. Nassar's motion for summary judgment, counterclaim/interpleader defendant Hiyam N. Nassar's crossclaim for partial summary judgment, and defendants TIAA/CREF's motion for discharge in interpleader and for attorneys' fees.
On August 5, 1994, plaintiffs Lisa Nassar Stickney and George J. Nassar commenced the present lawsuit pursuant to the Employee Retirement Income Securities Act of 1974, 29 U.S.C.A. 1132 ("ERISA"), claiming entitlement as beneficiaries to all death benefits accumulated by their father, John I. Nassar, under annuity and life insurance contracts with defendants Teacher's Insurance and Annuity Association of America ("TIAA") and College Retirement Equities Fund ("CREF"), and additionally, costs and attorneys' fees pursuant to 29 U.S.C.A. § 1132(g).
This court has jurisdiction pursuant to ERISA, 29 U.S.C.A. §§ 1001, et seq., which has broad application to any employee benefit plan established or maintained by an employer engaged in commerce. 29 U.S.C.A. § 1003(a). ERISA further defines "employee benefit plan" or "plan" as an "employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C.A. § 1002(3). See §§ 1002(1) and (2). ERISA shall "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ...," and its civil enforcement provisions were intended by Congress to be matters of exclusive federal concern. 29 U.S.C.A. § 1144(a); Pilot Life Insurance Company v. Dedeaux, 481 U.S. 41, 54, 107 S.Ct. 1549, 1556-57, 95 L.Ed.2d 39 (1987).
*414 On February 10, 1995, Plaintiffs Lisa Nassar Stickney and George J. Nassar filed the present motion for summary judgment, seeking 50% of the proceeds of the TIAA/CREF annuity contracts issued to their father, John I. Nassar, based on contributions made during his employment by Muhlenberg College; 100% of the proceeds of the TIAA/CREF annuity contracts issued to their father, John I. Nassar, based on contributions made during his employment by Lehigh University and the American University in Beirut; and 100% of the proceeds of the collective life insurance policy TIAA issued to their father, John I. Nassar.
On February 23, 1995, counterclaim/interpleader defendant Hiyam N. Nassar, the deceased's second wife, filed a crossclaim for partial summary judgment, seeking entitlement to all or a portion of the proceeds as well, on the bases that she is the surviving spouse of the deceased and entitled to the benefits pursuant to the Retirement Equity Act of 1984, codified at 29 U.S.C.A. § 1055, or alternatively, as the beneficiary of John Nassar's TIAA and CREF annuity contracts and TIAA collective life insurance policy. In her motion, crossclaim/interpleader defendant Hiyam N. Nassar requests partial summary judgment, awarding her all of the proceeds contributed to the TIAA/CREF Plans, subsequent to August 23, 1984, pursuant to the Retirement Equity Act of 1984; or alternatively, partial summary judgment, awarding one-half of the proceeds contributed to the TIAA/CREF Plans, subsequent to August 23, 1984, and a trial on the issue of the change of beneficiary by John I. Nassar, as to all funds which are not awarded to Hiyam N. Nassar.
Lastly before the court is defendants TIAA/CREF's motion for discharge in interpleader and for costs and attorneys' fees in connection with this action. TIAA/CREF assert that their total expenses and attorneys' fees in connection with the interpleader action, which through May, 1995 amounted to $450.89 and $7,183.50, respectively, should be assessed against the proceeds of the annuities and/or insurance contract which TIAA/CREF paid into the registry of this court. On June 23, 1995, TIAA/CREF deposited $609,204.28, the entire proceeds, including interest, attributable to CREF annuity contract PO48790-7. On this same date TIAA/CREF deposited $221,270.58, the entire proceeds, including interest, attributable to TIAA annuity contract A128372-8. Moreover, on June 27, 1995, TIAA/CREF deposited $3,562.36, the entire proceeds, including interest, attributable to TIAA Collective Life Insurance Policy G0760145. Thus, the entire sum presently in the registry of the court amounts to $834,037.22.
The threshold legal issue before this court appears to be one of first impression. The fundamental question at issue is: What is the "plan" referred to in 29 U.S.C.A. § 1055(e)(2) of the Retirement Equity Act of 1984 ("REACT")? This section provides:
In the case of any individual account plan or participant ... the term `qualified preretirement survivor annuity' means an annuity for the life of the surviving spouse the actuarial equivalent of which is not less than 50% of the portion of the account balance of the participant (as of the date of death) to which the participant had a nonforfeitable right.
29 U.S.C.A. § 1055(e)(2).
Concerning the above quoted provision of REACT, § 303(c)(1) of the Transitional Rules enacted by Congress in 1984 provide:
(c) Requirement of joint and survivor annuity and preretirement survivor annuity.
(1) Requirement that participant have at least 1 hour of service or paid leave on or after date of enactment.  The amendments made by sections 103 and 203 [amending the rules under ERISA and the parallel provisions under the Internal Revenue Code] shall apply only in the case of participants who have at least 1 hour of service under the plan on or after the date of enactment of this Act [Aug. 23, 1984] or have at least 1 hour of paid leave on or after such date of enactment [Aug. 23, 1984].
Retirement Equity Act, Pub.L. No. 98-397, § 303(c)(1), 98 Stat. 1451 (codified as a historical note to 29 U.S.C.A. § 1001).
*415 In order to satisfy the aforementioned provisions of REACT, when a participant/employee has contracted with a legal reserve life insurance company which manages all monies remitted by the participant's present and prior employers as well as the participant, in a singular fund, does the account balance subject to REACT refer to the monies remitted pursuant to employment by the institution at which the participant was employed on or after the date of enactment of REACT, or is the account balance subject to REACT the entire accumulated sum, including the amounts remitted pursuant to employment by prior employers?
For the reasons set forth herein, upon consideration of the parties' motions, plaintiffs Lisa Nassar Stickney and George J. Nassar's motion for summary judgment will be GRANTED IN PART, entitling them to 50% of the account balance pursuant to contributions made to the TIAA/CREF annuity contracts during the period the deceased was employed at Muhlenberg College, the amount of said judgment to be determined at trial; plaintiffs Lisa Nassar Stickney and George J. Nassar's motion for summary judgment will be GRANTED IN PART in the amount of $3,562.36, the amount representing 100% of the TIAA collective life insurance policy; and counterclaim/interpleader defendant Hiyam N. Nassar's motion for partial summary judgment will be GRANTED IN PART, entitling her to 50% of the account balance pursuant to contributions made to the TIAA/CREF annuity contracts during the period the deceased was employed at Muhlenberg College, the amount of said judgment to be determined at trial. Defendants TIAA/CREF's motion for discharge in interpleader and for costs and attorneys' fees as well as plaintiffs Lisa Nassar Stickney and George J. Nassar's motion for attorneys' fees will be considered at the trial, and the Court will issue its ruling on these motions after a final resolution of the merits.

I. FACTS
The instant action results from the death of John I. Nassar ("the deceased"), on January 18, 1994. Beginning in 1966 and until his death, the deceased was a professor of mathematics and employee of Muhlenberg College. Before his tenure at Muhlenberg, the deceased was employed by Lehigh University and the American University in Beirut.
TIAA is a New York non-profit, legal reserve life insurance company which provides fixed retirement annuities, group insurances and individual and collective life insurance to institutions of higher education. It was organized under New York law in 1918 by the Carnegie Foundation for the Advancement of Teaching which conducted a study of the need for pensions for individuals in higher education. See Peters v. Wayne State University, 476 F.Supp. 1343, 1346 (E.D.Mich. 1979), rev'd on other grounds, 691 F.2d 235 (6th Cir.1982). The Foundation recognized that "a college retirement system should rest upon the cooperation and mutual contributions of the colleges and teachers," and "[t]he greatest freedom of movement of the college teacher from one college to another should be provided for." Id. In 1952, the New York State Legislature created CREF, a companion not-for profit organization, which issues individual, variable retirement annuities to those employees who are eligible for TIAA contracts. At present TIAA/CREF is the funding vehicle for over one million employees affiliated with over 4,500 institutions of higher education. See Stephen R. Bruce, Pension Claims: Rights and Obligations 25 (2nd ed. 1993).
Under the TIAA/CREF system, each employee has an individual annuity contract directly with TIAA/CREF. The educational institution matches its employees' contributions, remitting both contributions to TIAA/CREF which then manages the funds. All contributions, including interest, are immediately credited to the employee's individual account as they accumulate. See Spirt v. Teachers Insurance and Annuity Association, 691 F.2d 1054, 1057 (2nd Cir.1982). An additional characteristic of TIAA/CREF, and the heart of the legal issue involved in the present case, is the concept of "portability," which Spirt defines:
Pursuant to contract, all accumulated benefits are fully vested and fully `portable' at all times. Thus each employee has an *416 immediate property interest in the benefits that accrue by virtue of the contributions made on the employee's behalf. In addition, each employee retains this ownership right if and when that employee moves on to other employment ... If a plan participant moves to another university that has adopted a TIAA/CREF retirement program for its employees, the new employer will pay its own pension contributions and those which it withholds from the employee's salary into the employee's existing account. If a plan participant dies before retirement, the funds accumulated in the account are paid to a designated beneficiary as a death benefit.
Id. at 1057-58.
Of course, the Second Circuit decided Spirt prior to 1984 when Congress enacted REACT.
Defendant TIAA issued an individual fixed type retirement annuity contract to the deceased on October 1, 1958, as well as a collective life insurance policy on September 1, 1966. In addition, on October 1, 1958, defendant CREF issued an individual, variable retirement annuity contract to the deceased. Unfortunately, the deceased died on January 18, 1994, prior to the annuity starting date of March 1, 1994.
When the deceased entered into the annuity contracts with TIAA/CREF, he was married to his first wife, Mary, with whom he had two children, the plaintiffs, Lisa and George. According to the records of TIAA/CREF, the deceased designated Lisa and George as primary beneficiaries on a form signed by the deceased on May 31, 1977. Paragraph 19 of the General Provisions of both the TIAA and CREF annuity contracts indicates the participant may change the beneficiary "[b]y filing written notice with TIAA [CREF] at its home office in form satisfactory to TIAA [CREF]" and no "change will take effect unless received by TIAA [CREF] at its home office." Paragraph 10 of the collective life insurance contract contains identical language.
There is no dispute that the deceased and his employers paid premiums to TIAA and CREF from October 1, 1958 until the time of the deceased's death. Moreover, it is undisputed that TIAA held the life insurance proceeds which it was liable to pay to the deceased's beneficiary. However, defendants TIAA/CREF did not discharge their admitted liability in response to plaintiffs Lisa Nassar Stickney and George J. Nassar's original request for the entire sum of the TIAA/CREF funds as the beneficiaries of the death benefit because TIAA/CREF alleged that Hiyam N. Nassar, the deceased's second wife, was an adverse claimant to the proceeds and therefore TIAA/CREF would be subjected to potential multiple liability.
Because of defendants TIAA/CREF's concerns, they filed a counterclaim for interpleader pursuant to F.R.C.P. 22 and U.S.C. §§ 1335, 1397 and 2361, as well as a motion to join Hiyam Nassar as a defendant on the counterclaim for interpleader. TIAA/CREF asserted two bases for their allegation of conflicting claims to the proceeds: 1) the Retirement Equity Act which amended ERISA on August 23, 1984 to provide a preretirement survivor annuity to the surviving spouse of a participant who dies prior to the annuity starting date of the pension (See 29 U.S.C. § 1055); and 2) a Declaratory Judgment action Hiyam Nassar filed in the Orphans Court of Lehigh County, Pennsylvania in which she alleges the deceased signed a holographic will, dated June 9, 1988, bequeathing one-half of his estate to her, and the remaining one-half to the children of their marriage, Eddie and Omar Nassar. Moreover, Hiyam Nassar avers in her declaratory judgment petition in the Orphans Court of Lehigh County that the deceased changed his intended beneficiaries on his TIAA and CREF contracts which were either inadvertently misplaced or lost in the mail. In consideration of defendants' TIAA/CREF's motion, on October 31, 1994, this court filed an order joining Hiyam Nassar, as Executrix of the estate of deceased and natural guardian of their children, pursuant to Rules 13(h) and 19 of the Federal Rules of Civil Procedure.
On February 10, 1995, plaintiffs Lisa Nassar Stickney and George J. Nassar filed the present motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, asserting claims to 50% of the *417 proceeds from the annuity contracts based upon the deceased's contributions while employed by Muhlenberg College, 100% of the proceeds based upon the deceased's contributions made during his employment at Lehigh University and the American University in Beirut, and 100% of the proceeds of the life insurance policy. However, Hiyam N. Nassar filed a motion for partial summary judgment, alleging entitlement to all of the proceeds contributed to the TIAA and CREF accounts subsequent to the effective date of REACT, August 23, 1984, or alternatively, one-half of the proceeds contributed to TIAA/CREF after August 23, 1984, and a trial to resolve the issue as to the alleged change of beneficiaries to the TIAA/CREF contracts.
On June 8, 1995, the Court entered an order granting defendants TIAA/CREF's motion to deposit disputed funds into the registry of the court pursuant to 28 U.S.C. § 1335(a) and F.R.C.P. 67. On June 23, 1995, TIAA/CREF deposited $609,204.28, the proceeds, including interest, attributable to CREF PO4879-7 and $221,270.58, the proceeds, including interest, attributable to TIAA A128372-8. On June 27, 1995, TIAA/CREF deposited $3,562.36, the amount of Collective Life Insurance Policy G0760145, including interest, and additionally filed the motion for discharge in interpleader and for attorneys' fees.
Also on June 8, 1995, having previously granted counterclaim/interpleader defendant Hiyam N. Nassar's request dated March 13, 1995, for an additional 30 days to submit affidavits, the Court entered an order notifying counterclaim/interpleader defendant Hiyam N. Nassar:
... in the event she fails to file on or before June 19, 1995, affidavits or bring to the attention of this Court depositions, answers to interrogatories, admissions or other factual evidence submitted under oath which raise genuine issues of material fact in response to plaintiffs Lisa Stickney Nassar and George J. Nassar's motion for summary judgment, or alternatively, in support of counterclaim/interpleader defendant Hiyam N. Nassar's motion for partial summary judgment, this court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, may determine that there are no genuine issues of material fact and may grant summary judgment against counterclaim/interpleader defendant Hiyam N. Nassar should this Court determine plaintiffs Lisa Nassar Stickney and George J. Nassar are entitled to judgment as a matter of law.

II. STANDARD OF REVIEW  SUMMARY JUDGMENT
The law is clear that when a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is properly made, the non-moving party cannot rest on the mere allegations of the pleadings. Celotex v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rather, in order to defeat the motion for summary judgment, the non-moving party must, as required by Rule 56(e), "go beyond the pleadings and by her own affidavits, or by the `depositions, answers to interrogatories and admissions on file,' designate `specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324, 106 S.Ct. at 2553.
The Supreme Court in Celotex determined that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322, 106 S.Ct. at 2552. Where the non-moving party fails to make such a showing with respect to an essential element of his case, "there can be `no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323, 106 S.Ct. at 2552. Therefore, "[t]he moving party is `entitled to summary judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id. The Supreme Court in *418 Anderson determined that this burden a nonmoving party faces is identical to that necessary to defeat a motion for a directed verdict under Rule 50(a):
The judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented. The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party].
Id. 477 U.S. at 252, 106 S.Ct. at 2512.

III. CHANGE OF BENEFICIARY ON THE ANNUITY CONTRACTS AND COLLECTIVE LIFE INSURANCE POLICY
Counterclaim/interpleader defendant Hiyam N. Nassar contends that genuine issues of material fact exist concerning a change in beneficiary of the TIAA/CREF annuity contracts and collective life insurance policy. In her answer to plaintiffs' motion for summary judgment, Hiyam N. Nassar claims that a change was made in the beneficiary designation. ¶ 8. As heretofore stated, as a party opposing a motion for summary judgment, she cannot rest on the mere allegations of her pleadings. Celotex Corp. v. Catrett, 477 U.S. at 324, 106 S.Ct. at 2553. Thus this court ordered counterclaim/interpleader defendant Hiyam N. Nassar to produce affidavits, depositions, answers to interrogatories, admissions or other factual evidence which raise genuine issues of material fact. However, for the following reasons, the affidavits which Hiyam Nassar submitted do not rise to a level which raises any genuine issues of material fact.
First, it is well settled under Pennsylvania law that in order to effect a change in the beneficiary of an insurance policy, a party must comply with the policy. Carruthers v. $21,000, 290 Pa.Super. 54, 434 A.2d 125, 127 (1981) (citing Riley v. Wirth, 313 Pa. 362, 169 A. 139 (1933) and Sproat v. Travelers Insurance Company, 289 Pa. 351, 137 A. 621 (1927)). The only exception to strict compliance with the terms of the policy which will be recognized in Pennsylvania is when the policyholder does "all that he reasonably can under the circumstances to comply with the terms of the policy." Provident Mutual Life Insurance Company of Philadelphia v. Ehrlich, 508 F.2d 129 (3rd Cir. 1975); see also Carruthers, 290 Pa.Super. 54, 434 A.2d at 127.
As previously noted, the TIAA/CREF contracts set out explicit requirements for the procedure one must follow to effectuate a change of beneficiary that TIAA/CREF will honor. TIAA/CREF specifically require that a participant file written notice with the home office of TIAA/CREF in form satisfactory to TIAA/CREF. The seven affidavits submitted by counterclaim/interpleader defendant Hiyam N. Nassar raise no material issues as to a change of beneficiary in the TIAA/CREF contracts, or evidence that the deceased made every reasonable effort to comply with the TIAA/CREF requirements. Likewise, a genuine issue of material fact is not raised in the affidavit which states that the deceased made a holographic will prior to his death. These affidavits may be summarized as stating only that it was the intention of the deceased that the plaintiffs, Lisa Nassar Stickney and George J. Nassar, should receive "nothing" at his death:
1. Jack T. Zilfou, nephew of the deceased, states that he heard his uncle comment on numerous occasions that Lisa Nassar Stickney and George Nassar "don't deserve a penny from his money."
2. Basima Hamati-Atieh, niece of the deceased, states that she witnessed on several occasions her uncle stating that he "had no intentions of leaving any money for George Nassar or Lisa Nassar Stickney."
3. Husam F. Hamati, nephew of the deceased, states that Lisa Nassar Stickney and George Nassar were estranged from the deceased from the time he divorced his first wife, and that his uncle had stated to him that "he did not want George Nassar or Lisa Nassar Stickney to receive a single penny when he died."
4. Albert Richie, a friend of the deceased, states that the deceased told him that when he died, "no one would get a penny *419 of whatever he owned, except Edward Nassar, Omar Nassar and Hiyam Nassar."
5. Delores Szlivka, a friend of the deceased, states that the deceased stated in her presence that "all his assets, everything he owned, would be left to Hiyam Nassar, Eddie Nassar and Omar Nassar" and that he "would not leave `a penny' to George Nassar or Lisa Nassar Stickney."
6. Kelly L. North Hamati, wife of the deceased's nephew, states that during the deceased's hospitalization he stated that "all his assets were for his wife Hiyam, and his children, Eddie and Omar."
7. Nader F. Hamati, nephew of the deceased, states that his uncle shared with him his disappointment that George and Lisa had deserted him and told him that "he had no intention whatsoever of leaving any of his assets" to George or Lisa. Mr. Hamati further states that his uncle personally handwrote a will in his presence, and then dictated his assets (which included "TIAA") which Mr. Hamati wrote on the back of the will.
None of the affidavits indicate that the deceased made any effort to bring about a change in beneficiary by removing Lisa and George as the beneficiaries of the TIAA/CREF annuity contracts and/or TIAA collective life insurance policy. Thus, counterclaim/interpleader defendant Hiyam N. Nassar has failed to meet her burden of establishing genuine issues of material fact in regard to a change in beneficiary on both the TIAA/CREF annuity contracts and the TIAA collective life insurance policy.

IV. THE RETIREMENT EQUITY ACT OF 1984 ("REACT") and QUALIFIED PRERETIREMENT SURVIVOR ANNUITIES ("QPSAS")
In his excellent reference book, Pension Claims: Rights and Obligations (2nd ed. 1993), Stephen R. Bruce, in an introduction entitled "The Complexity of Pension Plans and Law," aptly commented that "Congressman Barry Goldwater could have been serving as spokesman for most of the private bar" when he made this statement:
`Complicated' sums up this entire area. My staff and I have made forays into the world of private pension plans and ERISA, and after several briefings, have come to the conclusion that for every assumption or rule, there are at least 200 exceptions.
Pension Claims, supra, at xxx.
In 1984, Congress enacted the Retirement Equity Act of 1984, Pub.L. 98-397, 98 Stat. 1426, amending the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. § 1001 et seq. as well as the Internal Revenue Code of 1954, 26 U.S.C. § 401 et seq. The legislation sought to rectify the inadequacies in the existing law which "failed to delineate clearly a spouse's interest in an employee's pension benefits ... [leaving] women who worked in the home and contributed significantly to the family's security without the ability to obtain any pension benefits upon their husband's death or upon divorce." See Ablamis v. Roper, 937 F.2d 1450, 1453 (9th Cir.1991). Prior to REACT, a plan could "deny a widow any pension benefits if her husband die[d] after earning significant retirement benefits ... because [the law] permit[ted] the forfeiture of all retirement benefits if an employee die[d] before retirement age ... [and did not] require that a spouse participate in a decision to waive survivor benefits under a pension plan." 130 Cong. Rec. H13325 (daily ed. May 22, 1984) (statement of Rep. Rostenkowski).
Pursuant to REACT, each pension plan which meets the Act's requirements must provide a qualified preretirement survivor annuity (QPSA) to the surviving spouse of a vested participant who dies before the annuity starting date. 29 U.S.C.A. § 1055(a)(2). The QPSA is automatic unless the participant elects to waive it, and the spouse must not only consent to the waiver, but it must be witnessed by a plan representative or notary public. 29 U.S.C.A. § 1055(c)(1)(A)(i) and (c)(2)(A). There is no dispute among the parties that counterclaim/interpleader defendant Hiyam N. Nassar is entitled to a QPSA, as the parties agree she has not waived her rights to it. However, there are discrepancies in the parties' interpretations of REACT as to the amount of the QPSA to which counterclaim/interpleader defendant Hiyam N. Nassar is entitled. The discrepancies appear *420 to the court to be a result of the interpretation of 29 U.S.C.A. § 1055(e)(2) and § 303(c)(1) of REACT, codified as a historical note following 29 U.S.C.A. § 1001.
Under 29 U.S.C.A. § 1055(b)(1)(C), an individual account plan, the type of plan at issue in the present case, is subject to the requirements of REACT unless: (i) the plan provides that the participant's nonforfeitable accrued benefit is payable in full, on the death of the participant, to the participant's surviving spouse, or the spouse consents to a designated beneficiary pursuant to the requirements of the Act; (ii) the participant does not elect the payment of benefits in the form of a life annuity; and (iii) the plan is not a direct or indirect transferee (in a transfer after December 31, 1984) of a plan required to provide automatic survivor benefits. 29 U.S.C.A. § 1055(e)(2) defines a QPSA for the purposes of an individual account plan. An "individual account plan" is synonymous with a "defined contribution plan" for the purposes of ERISA, which defines it as:
a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account.
29 U.S.C.A. § 1002(34).
29 U.S.C.A. § 1055(e)(2) defines a QPSA for the purposes of a defined contribution plan as "an annuity for the life of the surviving spouse the actuarial equivalent of which is not less than 50 percent of the portion of the account balance of the participant (as of the date of death) to which the participant had a nonforfeitable right." Defendants TIAA/CREF do not dispute that the entire amount of the proceeds of the annuity and insurance contracts are nonforfeitable and as such are payable in full to the beneficiaries and/or the surviving spouse of the deceased.
The general effective date of REACT is set out in § 302 of the Act: "Except as otherwise provided in this section or section 303, the amendments made by this Act shall apply to plan years beginning after December 31, 1984." Retirement Equity Act, Pub.L. No. 98-397, § 302(a), 98 Stat. 1451 (codified as a historical note to 29 U.S.C.A. § 1001). Section 303(c)(1) provides:
(c) Requirement of joint and survivor annuity and preretirement survivor annuity.
(1) Requirement that participant have at least 1 hour of service or paid leave on or after date of enactment.  The amendments made by sections 103 and 203 [amending the rules under ERISA and the parallel provisions under the Internal Revenue Code] shall apply only in the case of participants who have at least 1 hour of service under the plan on or after the date of enactment of this Act or have at least 1 hour of paid leave on or after such date of enactment.
Thus, § 303(c)(1), the rule pertaining specifically to the requirement of joint and survivor annuities and qualified preretirement survivor annuities, mandates an earlier effective date for the present action. See Nelson v. Bank of Boston, N.A., 699 F.Supp. 351, 353 (D.Mass.1988).
The relevant inquiry is whether the entire sum accumulated pursuant to the TIAA/CREF annuity contracts constitutes "the plan" subject to REACT, or whether "the plan" is merely the portion of the proceeds contributed to TIAA/CREF pursuant to the deceased's involvement with a retirement plan offered through Muhlenberg College, the only institution in which the parties agree the deceased had one hour of service on or after August 23, 1984. The collective life insurance policy is not subject to REACT, which only applies to ERISA-qualified pension plans. See 29 U.S.C.A. § 1055(a).

V. THE TIAA/CREF ANNUITY CONTRACTS
There are two annuity contracts before the Court, a TIAA deferred annuity contract as well as a CREF unit-annuity certificate. The TIAA contract, as issued on October 1, 1958 to the deceased, states:
if you die before your annuity payments begin, a death benefit in the form of an annuity will be provided for your Beneficiary ... Your premiums purchase fully *421 paid portions of your life annuity, and of the death benefit for your Beneficiary ... The total of all such portions will constitute the whole annuity and death benefit.
However, TIAA/CREF attached identical endorsements to both contracts to conform to the requirements of the Retirement Equity Act of 1984, and which provide January 1, 1985 as the date they become effective. Paragraph (3) pertains to a spouse's rights to benefits and states in pertinent part:
If all or part of your Accumulation is attributable to contributions made under a retirement plan or tax-deferred annuity plan subject to ERISA and a plan contribution has been paid on your behalf after August 22, 1984; then only to the extent required by the IRC or ERISA, your rights to choose an income option and to name a beneficiary for the Death Benefit are subject to your spouse's right, if any, to benefits as follows:
Spouse's Survivor Death Benefit. If you die before the Annuity Starting Date and you are then married, the payment of the Death Benefit to your named beneficiary is subject to your spouse's right to receive a Death Benefit of an annuity which is the actuarial equivalent of one-half of the portion of the Accumulation, if any, attributable to contributions made under a plan subject to ERISA, provided a plan contribution has been paid after August 22, 1984. Your spouse's right to a Survivor Death Benefit may be waived, in form satisfactory to TIAA, with your spouse's written consent or verification that your spouse cannot be located ...
The law is clear that counterclaim/interpleader defendant Hiyam is entitled to a QPSA which is no less than the actuarial equivalent of 50% of the account balance of the "individual account" or "defined contribution plan." The Manitowoc Engineering Co. Salaried Employees' Deferred Profit Sharing Plan, 1987 WL 49391, *2 (E.D.Wis.1987); Naddeo v. Officers and Employees Pension Plan of Laundry, Dry Cleaning & Dye Workers' International Union, 637 F.Supp. 82 (E.D.Pa.1986). However, there are mixed issues of material fact and law which relate to the nature of the TIAA/CREF annuity contracts and which must be resolved before the Court can determine whether counterclaim/interpleader defendant Hiyam N. Nassar is entitled to only 50% of the account balance contributed while the deceased was employed at Muhlenberg College, or whether she would be entitled additionally to 50% of the contributions made to TIAA/CREF during the deceased's employment at Lehigh University and the American University in Beirut, prior to his employment at Muhlenberg College.
The Court has experienced no difficulty in determining that the portions contributed to the TIAA/CREF annuity contracts during the deceased's employment at Muhlenberg College are subject to REACT, and therefore counterclaim/interpleader defendant Hiyam N. Nassar is entitled to 50% of these portions. The Court has encountered difficulty, however, in determining whether counterclaim/interpleader Hiyam N. Nassar is entitled to 50% of the portion of the funds contributed while the deceased was employed by Lehigh University and the American University in Beirut in the years 1958 through 1966. Notwithstanding the fact that the only documents TIAA/CREF has presented to the Court regarding the existence of a "pension plan" are the annuity contracts TIAA/CREF issued to the deceased in 1958, defendants TIAA/CREF state in their pleadings:
Premiums were being remitted by a private employer sponsored Plan (Muhlenberg College) to the annuities on the effective date of the Retirement Equity Act ("REACT"), and the proceeds of the contributions made under Muhlenberg College's Retirement Plan are governed by the preretirement surviving spousal annuity provisions of the Act at 29 U.S.C. § 1055 ... As surviving spouse, it would appear under the law that Hiyam Nassar may be entitled to claim 50% of the proceeds of the Muhlenberg College contributions under REACT independent of any claim she might assert as beneficiary or otherwise. The proceeds of retirement plans of the deceased's prior employers, Lehigh University and the American University in Beirut, are not governed by the *422 Act because no contributions were being made by those plans on or after the effective date of the Act, August 23, 1984.
See ¶ 7, Defendants' Counterclaim for Interpleader.
TIAA/CREF's reason for taking this position has not been explained to the Court. Nor have the parties brought to the court's attention contracts or documents which detail a plan the individual colleges have with TIAA/CREF, or which the individual colleges have with their employees.
Furthermore, in his excellent reference book, Pension Claims: Rights and Obligations, 25 (2nd ed. 1993), Stephen R. Bruce explains that multiple-employer plans are plans to which more than one employer contributes, "whether or not the plan was established pursuant to collective bargaining." Bruce further explains that TIAA/CREF falls into this category:
The largest and best-known example of a nonbargained multiple-employer plan is the Teachers Insurance and Annuity Association and College Retirement Equities Fund (TIAA/CREF), which covers more than 1 million staff members of over 4,500 colleges, universities, independent schools, libraries, and nonprofit research and educational institutions and has over $80 billion in assets. As in multiemployer plans, participants in [non-bargained] multiple-employer plans can have their service with the different employers contributing to the plan pieced together for purposes of vesting and determining the amount of their benefits.
Id.
Thus, it would appear that under Bruce's reasoning, there may be only "one plan," and therefore pursuant to REACT, counterclaim/interpleader defendant Hiyam N. Nassar might well be entitled to 50% of the entire amount contributed to the TIAA/CREF annuity contracts since 1958. As heretofore pointed out, and consistent with Bruce's view, the 2nd Circuit explained that under the TIAA/CREF system, "all accumulated benefits are fully vested" and the "employee retains this ownership right [to all accumulated benefits] when that employee moves on to other employment." Spirt, 691 F.2d at 1057.
The language provided in the endorsements to the annuity contracts to provide a QPSA in an amount equal to the actuarial equivalent of 50% of the account balance of the plan is consistent with 29 U.S.C.A. § 1055(e)(2). However, the law as well as the contract are equally ambiguous as to what the plan is in the circumstances before the Court. While the Act is clear that the qualified preretirement survivor annuity provisions apply to any participant who performs at least one hour of service under the plan on or after the date of enactment of August 23, 1984, See S.Rep. No. 98-575, 98th Cong. 2nd Sess. 17, reprinted in 1984 U.S.C.C.A.N. 2563, it is not clear, however, as to whether Congress intended to make subject to REACT the contributions made to the TIAA/CREF annuity contracts pursuant to the deceased's employment at Lehigh University and the American University in Beirut, to which contributions ceased in 1966, prior to the enactment of ERISA and REACT, but which TIAA/CREF maintained in two individual accounts on behalf of the deceased, one through TIAA and one through CREF. Therefore, the Court will only rule that as a matter of law REACT at least applies to the Muhlenberg College contributions to the TIAA/CREF accounts. In order to make the determination as to whether counterclaim/interpleader defendant Hiyam N. Nassar is entitled to 50% of the portion of the funds contributed prior to the deceased's employment at Muhlenberg College, the Court has concluded that this issue will require a trial to determine whether the material facts concerning the contributions made to TIAA/CREF prior to the deceased's employment at Muhlenberg College indicate whether those portions of the TIAA/CREF account balances should be paid to plaintiffs Lisa Nassar Stickney and George J. Nassar, the named beneficiaries, in their entirety, or whether REACT applies and thus counterclaim/interpleader defendant Hiyam N. Nassar, as the surviving spouse of the deceased, is entitled to 50% of these pre-Muhlenberg College contributions.

*423 VI. TIAA/CREF'S MOTION FOR DISCHARGE IN INTERPLEADER AND FOR ATTORNEYS FEES/PLAINTIFFS' MOTION FOR ATTORNEYS FEES
The Court will hear these outstanding motions at the trial which is necessary for a final resolution of the rights of the claimants as to the proceeds accumulated during the deceased's employment at Lehigh University and the American University in Beirut. At that time, the Court has the discretion to allow reasonable attorneys' fees and costs of action to either party pursuant to 29 U.S.C.A. § 1132(g)(1).

VII. CONCLUSION
In consideration of the parties' cross motions for summary judgment in regard to the insurance proceeds and counterclaim/interpleader defendant Hiyam N. Nassar having raised no genuine issues of material fact in regard to a change of beneficiary on the insurance policy, the Court will GRANT partial summary judgment to plaintiffs Lisa Nassar Stickney and George N. Nassar for $3,562.36, the amount representing $100% of the proceeds of the collective life insurance policy, and DENY counterclaim/interpleader defendant Hiyam N. Nassar's motion for partial summary judgment insofar as it relates to the insurance proceeds.
In consideration of the parties' cross motions for summary judgment in regard to the annuity contracts, there being no genuine issues of material fact in regard to a change in beneficiary or counterclaim/interpleader defendant Hiyam N. Nassar's entitlement to 50% of the proceeds of the TIAA/CREF annuity contracts which were contributed during the deceased's employment by Muhlenberg College, the Court will GRANT IN PART plaintiffs Lisa Nassar Stickney and George J. Nassar's motion for summary judgment, entitling them to 50% of the account balance pursuant to contributions made to the TIAA/CREF annuity contracts during the period the deceased was employed at Muhlenberg College, the amount of said judgment to be determined at trial; and the Court will also GRANT IN PART counterclaim/interpleader defendant Hiyam N. Nassar's motion for partial summary judgment, entitling her to 50% of the account balance pursuant to contributions made to the TIAA/CREF annuity contracts during the period the deceased was employed at Muhlenberg College, the amount of said judgment to be determined at trial.
In addition, as heretofore stated that there remain mixed questions of material fact and law regarding whether the entire accumulated sum of the contributions made to the TIAA/CREF annuity contracts are subject to REACT, the Court must hold a trial to resolve the issue as to whether plaintiffs Lisa Nassar Stickney and George J. Nassar are entitled to 100% of the proceeds of the TIAA/CREF annuity contracts accumulated during the deceased's employment at Lehigh University and the American University in Beirut, or whether REACT applies and therefore plaintiffs are only entitled to 50% of these portions as a matter of law.

ORDER
AND NOW, this 3rd day of August, 1995; for the reasons set forth in this Court's memorandum of August 3, 1995;
IT IS ORDERED: Plaintiffs Lisa Nassar Stickney and George J. Nassar's motion for summary judgment is GRANTED IN PART, entitling them to 50% of the account balance pursuant to contributions made to the TIAA/CREF annuity contracts during the period the deceased was employed at Muhlenberg College, the amount of said judgment to be determined at trial; plaintiffs Lisa Nassar Stickney and George J. Nassar's motion for summary judgment is GRANTED IN PART in the amount of $3,562.36, the amount representing 100% of the TIAA collective life insurance policy; counterclaim/interpleader defendant Hiyam N. Nassar's motion for summary judgment is GRANTED IN PART, entitling her to 50% of the account balance pursuant to contributions made to the TIAA/CREF annuity contracts during the period the deceased was employed at Muhlenberg College, the amount of said judgment to be determined at trial.
IT IS FURTHER ORDERED: The parties, including defendants TIAA/CREF, shall *424 participate in the trial for the purpose of determining: 1) the exact amount of the summary judgments based upon the contributions made to the TIAA/CREF annuity contracts during the period the deceased was employed at Muhlenberg College; and 2) the law concerning whether plaintiffs Lisa Nassar Stickney and George J. Nassar are entitled to 100% of the proceeds accumulated during the deceased's employment at Lehigh University and the American University in Beirut, or whether REACT applies to these contributions, and counterclaim/interpleader defendant Hiyam N. Nassar, as the surviving spouse of the deceased, is entitled to 50% of these portions.
IT IS FURTHER ORDERED: At the conclusion of the trial, the Court will hear arguments concerning TIAA/CREF's motion for discharge in interpleader and for attorneys' fees, as well as plaintiffs Lisa Nassar Stickney and George J. Nassar's motion for attorneys' fees.